## COUNTY OF FRANKLIN,

### JANUARY TERM, 1843.

[Continued from Vol. 15, page 161.]

---

PRESENT,

HON. CHARLES K. WILLIAMS, CHIEF JUDGE.
HON. STEPHEN ROYCE,
HON. ISAAC F. REDFIELD, } ASSISTANT JUDGES.
HON. WILLIAM HEBARD,

---

## ALBERT G. TARLETON *v.* WILLIAM BAKER.

Where two resident citizens of Vermont went into Canada for the purpose of
making a wager in reference to the result of a Presidential election, then
pending in the United States, and, while there, made the wager, and each
deposited the amount of money wagered by him in the hands of a stake-
holder, who was a citizen of Canada, with written directions to pay the
whole amount to the one or the other of the parties, according to the event,
it was held, that the contract must be treated as illegal, by the courts of this
State, to the same extent that it would have been, if made within the State.

And the loser, having, after the event was determined, but before the stake-
holder had delivered the stake to the winner, notified the stakeholder of
his revocation of the contract and demanded the money which he deposit-
ed, was allowed to recover back the amount of his deposit, in an action of
*indebitatus assumpsit* against the stakeholder.

2

Tarleton *v.* Baker.

As between the *parties* to an illegal wager, where money, or other property, has been advanced by one to the other upon the making of the contract, the wager is revocable at any time before the event happens.

But, as against a *stakeholder*, a revocation before the event happens is not necessary; but the loser may demand of him a return of his deposit, until, with the loser's express or implied assent, it has been paid over to the winner.

INDEBITATUS ASSUMPSIT for money had and received, money paid, laid out and expended, and money lent. Plea, the general issue, and trial by jury.

On trial the plaintiff gave evidence tending to prove, that about the first of August, 1840, the plaintiff and one George M. Kidder agreed, at St. Albans, in this State, to meet each other at Dunham, in Lower Canada, on the fifth day of the same August, and there deposit with the defendant, as a stakeholder, the sum of three hundred dollars,—the plaintiff to deposit two hundred dollars and the defendant one hundred; that on the fifth day of August the plaintiff and Kidder did meet at Dunham, and requested the defendant to receive the said money as stakeholder; that the defendant received the money, and agreed to pay it over according to certain written directions, signed by the plaintiff and Kidder, which were then delivered to the defendant, and which were in these words;—"Dunham, L. C., 'August 5, 1840. Enclosed three hundred dollars, to be paid 'George M. Kidder in case William Henry Harrison is elected 'President of the United States the next Presidential election in the 'United States; and, in case Martin Van Buren is elected President 'of the United States, to be paid to Mr. A. G. Tarleton; it is far-'ther understood and agreed, that, in case of the death of either of 'the said candidates before the next Presidential election, then one 'hundred dollars of the within is to be paid Geo. M. Kidder, and 'two hundred to Mr. A. G. Tarleton."

The plaintiff also gave evidence, tending to prove, that, on the 28th day of November, 1840, one Levi Stevens, having a power of attorney .from the plaintiff to receive the money deposited by the plaintiff, called upon the defendant, at Dunham, and demanded the money, and that the defendant then refused to deliver it to him; and also evidence tending to prove that Kidder was notified, by the

Tarleton *v.* Baker.

plaintiff's direction, on the 31st day of October, 1840, that the plaintiff revoked the wager.

The defendant introduced the depositions of James Smith and William Walker, who testified, in substance, that they were counsellors at law in Canada, and that, by the laws of Canada, a stakeholder may be called upon to pay over the money, deposited with him by the parties laying a wager, to the winning party, after the occurrence of the event which is to decide the wager, the stakeholder being bound by the agreement at the time of receiving the deposit, unless the wager is illegal; and that, by the same laws, a wager as to the result of a foreign election is not an illegal wager; and that, in case of the refusal of the stakeholder to pay the money to the winner, the winner may maintain an action against him therefor. The defendant also gave evidence tending to prove, that, at the time the wager in question was made, Kidder refused to make any wager in the United States.

The court instructed the jury, that the wager in question, being made by citizens of this State, was illegal by the laws of this State, notwithstanding it was made in Canada; that it is incident to every wager, that either party may rescind the wager, so long as the event is undecided; that, if the plaintiff rescinded the wager in question on the thirty-first of October, 1840, either party had the right, at any time thereafter, to take his money from the defendant; and that, if the defendant was forbidden by the plaintiff, or his agent, on the 28th of November, 1840, to pay over the money to Kidder, he had no right afterwards to make payment of the same to Kidder.

The jury returned a verdict for the plaintiff. Exceptions by defendant.

*Stevens & Seymour* for defendant.

1. The contract being made in Canada, and to be performed there, the *lex loci contractus* must govern. *Sherrill* v. *Hopkins*, 1 Cow. 103. *Van Shaick* v. *Edwards*, 2 Johns. Cas. 255. *Lodge* v. *Phelps*, 1 Johns. Cas. 139. *Smith* v. *Smith*, 2 Johns. 235. *Ruggles* v. *Keeler*, 3 Johns. 263. *Andrews* v. *Herriott*, 4 Cow. 508.

2. The laws of foreign countries must be proved like other facts, before they can be received in courts of justice. *Lincoln* v. *Ba-*

*telle*, 6 Wend. 475. *Francis* v. *Ocean Ins. Co.*, 6 Cow. 429. *Case* v. *Riker*, 10 Vt. 484. In this case the plaintiff offered no evidence, to show that the contract was illegal by the laws of Canada, or that, by those laws, he had a right to rescind. On the other hand, the defendant has proved, that, by the laws of Canada, the wager was legal. The plaintiff is presumed to know the laws of the country, where he enters into a contract; but there can be no legal presumption, that the defendant knew the laws of this State, not being within its jurisdiction.

3. If the contract is illegal, a court of justice will not interfere between the parties,—the principle of public policy being, *ex dolo malo non oritur actio. Yates* v. *Foot*, 12 Johns. 1. *McKeown* v. *Laverty*, 3 Wend. 494. *Lyon* v. *Strong*, 6 Vt. 222.

4. The common law of England recognizes the validity of wagers, as legal contracts. *Jones* v. *Randall*, Cowp. 37. *Da Costa* v. *Jones*, Cowp. 729. *Pope* v. *St. Ledger*, Salk. 344. *Lynell* v. *Longbotham*, 2 Wils. 36. *McKeown* v. *Laverty*, 3 Wend. 494.

*Hoyt & Nutting* for plaintiff.

1. The liability of the depositary, or stakeholder, depends upon the contract between the depositors. 9 Conn. 169. 8 B. & C. 221.

2. The contract in this case amounted simply to a wager, by two citizens of Vermont, as to the result of a Presidential election. This court very early decided all wagers to be illegal, as opposed to sound policy and good morals; *Collamer* v. *Day*, 2 Vt. 144; and the legislature of this State have made it highly penal for any man to " win or lose any money, or other valuable thing, by betting on the election of any person to any office;" Rev. St., c. 51, § 14. And see *Rust* v. *Gott*, 9 Cow. 169, and note.

3. The plaintiff insists, that, if the wager be rescinded, and the stakeholder notified thereof any time before he actually pay over the money to the winner, either party may recover the amount deposited by himself. *Allan* v. *Hearn*, 1 T. R. 56. *Cotton* v. *Thurland*, 5 T. R. 405. 15 E. C. L. 204. 16 S. & R. 147.

4. It does not appear by the case, that the wager was made in Canada. The parties met at St. Albans and agreed upon the terms and conditions of the wager, and the plaintiff submits, whether the ·

Tarleton v. Baker.

subsequent meeting at Dunham, and depositing the money with the defendant, was anything more than a part performance of that agreement.

5. The depositions introduced by the defendant do not prove what the law of Canada is, in a case like the present.

6. The Courts of this State should give no operation whatever to any foreign law, which legalizes in any way, or tends to encourage, wagering in reference to our elections ;—1, Because such contracts are against sound policy ;—2, Because they are opposed to good morals ; and—3, They are in open and direct violation of a public law of this State. 2 Kent 458. Story's Conf. of Laws 203. 13 Mass. 26.

The opinion of the court was delivered by

ROYCE, J.  In this state a wager, like the one in question, would be altogether illegal ; not only at common law, as tending to promote corruption and a spirit of gaming, and therefore opposed to public policy,—but as being moreover expressly prohibited by statute.   And so far as the law of Canada was shown upon the trial, it would seem to correspond with the English common law.   It is doubtless true, that in Canada, as in England, wagers upon indifferent subjects are valid, and that an action will lie to enforce them. The evidence from Canada speaks of wagers that are not illegal, in contradistinction to those that are so, without giving instances of the latter class.   But we are bound to suppose, that the exceptions to the validity of wagers in their law are not essentially more restricted than those in the English common law.   Hence we infer, that it is a requisite in the law of Canada, that a wager shall not tend directly to promote immorality, nor to contravene public policy.   The evidence clearly implies, that a wager between their citizens, upon the result of an election there, is regarded as illegal. And we cannot doubt, that if two of their citizens, with a view to evade the laws of their own country, should come into the United States and make such a wager, it would be pronounced illegal by the courts of Canada.   Indeed, this would be but an instance of applying a conservative and self-protecting principle, which is believed to pervade the jurisprudence of all civilized nations.   As between the parties to the present wager, we accordingly consider,

that it should be treated by the courts of this State as none the less illegal for having been made in Canada. The parties were resident citizens here, and their resort to Canada, as the place of concluding the contract, was obviously designed as an evasion of our laws. And we are at liberty to presume, that the defendant was aware of all this, and must have known, that, within the jurisdiction of Vermont, he might, under proper circumstances, be made subject to liability.

The case will therefore depend upon the views to be taken of an illegal wager. It is urged, that no remedy should be afforded in such a case, whether as between the parties to the wager, or in favor of either against a stake-holder. The want of such a rule, not only as applicable to illegal wagers, but to all contracts arising *ex turpi causa*, has, indeed, been regretted by several of the English judges, and the rule itself receives direct countenance from some of the New York cases. But the common law does not at present, as we believe, sanction the denial of its remedies in such extensive and unqualified terms. We deem it well settled, that an illegal wager is revocable at any time before the event happens; and that such a revocation, like the rescision of other contracts, places the parties *in statu quo*, and of course entitles them to a return of their deposits. Such I understand to be the rule as between the parties themselves, when money or other property has been advanced as a stake by one to the other upon the making of such a wager. It is said to be founded in the justice and policy of allowing to each party a *locus penitentiæ*, whilst the contract remains executory. I think it might also be referred to acknowledged principles, resulting from the illegality of the contract. But according to the case of *Cotton* v. *Thurland*, 5 T. R. 405, followed by *Lacaussade* v. *White*, 7 T. R. 535, and expressly confirmed by *Smith* v. *Bickmore*, 4 Taunt. 474, a revocation before the event happens is not necessary, as against a stakeholder, but the loser may demand of him a return of his deposit, until, with the loser's express or implied assent, it has been paid over to the winner. This is at present the received doctrine in the case of an illegal wager. Chit. on Cont. 637 and cases there cited. The event of an *illegal* wager cannot, of itself, confer a right of property upon the winner. It is only when he gets possession as owner, and that with the loser's unrevoked assent, that the

stake becomes his in the nature of an executed gift. In the mean-time the stakeholder, being a mere depositary without any interest in the stake, is legally bound to restore to each party his own contribution, if thereto required. And according to these views there can be no doubt, upon the facts appearing in the present case, but that the plaintiff established a right to recover back his deposit of the defendant.

Judgment of county court affirmed.