# Lewis *v.* Bruton.

| 74 | 317 |
| 108 | 301 |

*Action against Stakeholder, for Money deposited on Wager.*

1. *Action for money paid on wager; statutory provisions.*—The statute declaring all gambling contracts void, and giving an action to recover back money paid under them (Code, § 2131), applies only to actions between the parties to such contracts, and does not affect actions against stakeholders.

2. *Action against stakeholder, for money deposited on wager; lies when.* When money is deposited with a stakeholder, on a wager, either party may withdraw from the illegal transaction, and demand the return of his money, at any time before it has been paid over to the winner after the result is ascertained; and the loser may maintain an action against the stakeholder, if the latter pays the money to the winner after notice by the loser not to pay it.

3. *Same.*—The wager ·being on the result of a congressional election in a particular district, a payment by the stakeholder to the supposed winner after the result of the election is "generally known," or "publicly announced," but before the issue of an official certificate by the proper officer, is premature, and is no defense to a subsequent action by the loser, who, before the issue of the certificate, notified the stakeholder not to pay: but, *it seems*, the stakeholder may safely pay over the money after the official announcement of the result, without waiting for the decision of an uncertain contest.

4. *Judicial notice of contested election.*—The contested election between Gen. J. Wheeler and Col. W. M. Lowe, as member of Congress from the 8th district of Alabama, at the general election held in November, 1880, "is public, official history, of which the court takes judicial notice."

5. *Sufficiency of complaint.*—In an action against a stakeholder, to recover money deposited on a wager, and by him paid over to the sup-

[Lewis v. Bruton.]

posed winner, it is not necessary that the complaint should, by its averments, negative the fact that the money was so paid before notice not to pay, that being defensive matter merely.

APPEAL from the Circuit Court of Lawrence.

Tried before the Hon. H. C. SPEAKE.

This action was brought by Joseph A. Bruton, against Joseph M. Lewis, to recover the sum of $200, deposited by plaintiff with defendant, as a stakeholder, on a wager with Thomas H. Jones as to the result of the election between Gen. J. Wheeler and Col. W. M. Lowe, candidates for Congress from the 8th congressional district, at the general election in November, 1880; and was commenced on the 10th March, 1881. The first count of the complaint was in these words: "Plaintiff claims of defendant $200, paid to defendant on the 25th October, 1880, as a wager between plaintiff and one Thos. H. Jones on the result of the election between Joseph Wheeler and William M. Lowe for Congress, from the 8th congressional district of Alabama, at the election held on the 2d November, 1880; and plaintiff avers that he has demanded said money from defendant, which he failed and refused to pay; and plaintiff claims and sues for the same, with the interest thereon." The defendant demurred to this count, "because it does not allege that plaintiff demanded said sum of money from defendant, as a stakeholder, before the same was paid over to the winner, or gave notice to the defendant not to pay the money over to the winner, or to any other person than plaintiff himself." The court overruled the demurrer, and the cause was tried on issue joined on the plea of the general issue, and on a special plea which averred that the defendant paid the money over to said Jones before any demand or notice by plaintiff.

The evidence adduced on the trial, as set out in the bill of exceptions, did not show on what day the money was paid by the defendant to said Jones, nor on what day the official certificate of election was issued to Gen. Wheeler. W. W. Simmons, a witness for plaintiff, testified, that he was in Courtland "a few days after the election was over, and heard plaintiff talking to said Jones; that plaintiff proposed to withdraw the bet; and that Jones replied, *Wheeler was elected, and Lewis had paid the money over to him.*" J. E. Galey, another witness for plaintiff, testified, that he went with plaintiff to see defendant, and heard him ask defendant for the money, and tell him not to pay it to Jones; and that plaintiff further said, in that conversation, "that he was willing to withdraw the bet, or to let it stand until after Col. Lowe had contested." As to the time when this conversation occurred, the witness said, that "he could not locate the time exactly, but he thought it was within a week after the election, though it might have been ten days

[Lewis v. Bruton.]

after the election." The defendant himself testified, as a witness in his own behalf, "that after the election was over, and after the returns had all come in, and it was ascertained and publicly announced that Wheeler was elected, Jones demanded · the money which he held as stakeholder, and he paid it over on said demand; that he could not say positively how long after the election this occurred, but he thought it was from five or six to eight days; that he was certain the returns were then all in, and it was publicly announced that Wheeler was elected; that the returns from all the counties showed a majority for Wheeler, and it was notorious that he was elected; that plaintiff had not, at that time, in any way notified him not to pay the money to Jones, and he had not then heard that there was to be any contest." This was all the evidence adduced as to the time when the money was paid to Jones, or when the notice by plaintiff not to pay was given.

The defendant requested the following charges, which were in writing: 1. "If the jury believe that the defendant had paid the money over to Jones after the election of Wheeler was publicly announced, and before any demand for the money was made by plaintiff, or notice given not to pay it to Jones, then the plaintiff can not recover in this action." 2. "The certificate of election, when issued, takes effect by relation from the day of election, and that the defendant. is protected by the certificate in the payment which he made." 3. "If the jury believe, from the evidence, that defendant paid the money to Jones after the election was over, and before he had notice from plaintiff not to pay it over, defendant is not liable in this action, and the jury will find a verdict for him." The court refused each of these charges, and the defendant excepted to their refusal.

The overruling of the demurrer to the complaint, and the refusal of the. charges asked, are now assigned as error.

D. P. LEWIS, and J. WHEELER, for appellant.

W. P. CHITWOOD, contra. (No briefs on file.)   .

STONE, J.—We do not think section 2131 of the Code of 1876 exerts any influence in this case, except to the extent that it declares all contracts based on a gambling consideration to be void. The second clause of the section has reference to suits between the parties making the wager. It sheds no new light on the question of the stakeholder's liability.

The rule is general, both in England and in this country, that when a wager is made, and the stakes are deposited with a stakeholder, either party may, at any time before the result is ascertained, and the money paid over to the winner, withdraw from

[Lewis v. Bruton.]

the illegal transaction, notify the stakeholder, and demand and recover his deposit-money. Such is the general rule, and it has been long so settled in this State.—*Shackleford v. Ward*, 3 Ala. 37; *Ivey v. Pfifer*, 11 Ala. 535; *Davis v. Orme*, 36 Ala. 540; *Hawley v. Bibb*, 69 Ala. 52; 1 Whart. on Contr. § 452; 2 Pars. on Contr. 626; *Collamer v. Day*, 2 Verm. 144; *Tarleton v. Baker*, 18 Verm. 9; *McKee v. Manice*, 11 Cush. 357; *Love v. Harvey*, 114 Mass. 80; *Fisher v. Hildreth*, 117 Mass. 558; *Morgan v. Beaumont*, 121 Mass. 7. This rule is not universal. Whar. on Contr. § 452.

In the present case, the stakeholder, Lewis, paid the money to the supposed winner, before he was notified by his adversary not to pay it over. It does not seem to be disputed that Bruton did give Lewis notice not to pay the money over to Jones, the alleged winner. The contention is, that the payment was made after the result of the election was generally known, and publicly proclaimed.

Members of Congress are elected the first Tuesday after the first Monday in November.—Code of 1876, § 248. On the Saturday next after the election (an interval of four days), the probate judge and other named officers, as supervisors, are required "to make a correct statement, from the returns of the votes from the several precincts of the county, of the whole number of votes given therein for each office, and the person to whom such votes were given."—Code of 1876, § 291. A certified statement of the vote cast in the county, as required above to be made by the supervisors, is to be forwarded by the probate judge to the Secretary of State, immediately, and on the same day (Saturday) the service is performed.—Code, § 292. "It shall be the duty of the Secretary of State, within ten days after receiving the returns of election from the probate judges of each county, to furnish, from a count of the actual vote cast, as the same appears by the returns certified to him, certificates of election to such persons as may be ascertained to be elected to any office in this State."—Code, § 294. It is thus shown that the certificate of election may not, in fact, be issued by the Secretary of State, until sixteen or more days have elapsed, after the election has been held. Considering the many duties of the same kind, cast on the Secretary of State at the same time, and the uncertain time necessary for the various county returns to reach the Secretary of State, it is not reasonable to suppose the certificates of election will be made out in much less than ten, possibly fifteen days, after the day of election.

In the present record, there is an absence of proof when the certificate of election was issued—uncertainty as to the time when the money was paid by the stakeholder to the supposed winner, and when the notice was given by Bruton to him, not

[Lewis v. Bruton.]

to pay over the money to Jones. The reasonable inference from the testimony is, that both the payment and the notice not to pay preceded the issue of the certificate of election. The decision of these questions, however, is rendered unnecessary, as no ruling appears to have been made upon them. The charges asked and refused all ignore these questions, and claim a verdict for defendant, in the absence of·such certificate, if the money was in fact paid before notice not to pay, and after the result of the election was "publicly announced." The certificate afterwards issued, it is contended, related back to the election, and cured the irregularity. We can not assent to this. A payment before certificate of election issued, is at the peril of the stakeholder; and if the authority to pay be revoked, or the payment countermanded, before the actual issue of the certificate, an action for money had and received lies against the stakeholder. The Circuit Court did not err in refusing the charges asked. Whether there was a sufficient revocation in this case, we do not consider, as the question is not raised. *Patterson v. Clark*, 126 Mass. 531.

We do not propose, in this case, to consider which of the opposing candidates was in fact elected. We are, in no sense, assuming to make ourselves judges of the election. As we understand the law, that question was not, and, at the time the money must have been paid over, could not have been raised. We take it for granted, if the certificate of election had been issued before notice was given to the stakeholder not to pay, the charges asked would have been rested on that hypothesis, and not on the weaker one, that the result had been "publicly announced." In fact, we presume the Circuit Court did correctly rule on all questions not excepted to, and thus brought before us. If the money had been paid over, and the result of the election officially declared by the Secretary of State, *before notice to the stakeholder not to pay*, we are not prepared to say this would not be a complete bar to the action, even though the money was paid before the result was officially ascertained. Such official ascertainment might heal the irregularity of premature payment, and close the door against any demand afterwards made.

In what we have said, we have confined our rulings to what is known as the officially proclaimed result. We have not considered the question of the contested seat, which is public, official history, of which we take judicial notice. If necessary, we would probably hold the stake-holder would be justified in paying over the money on the official announcement, without waiting for the uncertain result of an election contest.

The demurrer to the first count of the complaint was rightly overruled. Payment to the alleged winner, before notice not

[Robertson v. Black.]

to pay, was defensive matter, the averment and proof of which rested with the defendant. The deposit being for an illegal purpose, the depositor had till the last moment to withdraw from the transaction, by revoking the authority to pay.

Affirmed.