The Court took time, and at an after day in the term, delivered their opinions as follows : —
Parker, J.
(After stating the action and the facts as above recited.) It appears, then, that whatever cargo the insured had on board the ship, at the time of subscribing the policy on which this action was brought, had been previously covered by the policy made by the Boston Marine Insurance Company. This fact appearing, it is clear that, without the memorandum on the policy, the effect of which will presently be considered, there could be no pretence for supporting this action ; for the policy contains within itself a provision intended to defeat any expectation grounded on such a state of facts. We are, therefore, necessarily brought to a consideration of the nature and legal operation of the memorandum ; because, if the plaintiff is entitled to recover, it must be on the strength of the words contained therein.
The counsel for the plaintiff seem fully aware of this position in which their demand is placed; and have, therefore, endeavored to show, —
1st. That this is a wagering policy ; and
2d. That, as such, it is valid, and ought to be carried into effect by the laws of this country.
*As to the second point, viz., whether a mere wager [ *6 ] policy, without interest, can be supported here conformably to the general character of our laws, and to the principles of our government, I apprehend we need not now determine that question; though, considering the great reluctance with which that doctrine was established as the common law by the courts of England, and the immediate interference of Parliament to nullify such policies, upon the doctrine’s being so established, — we may well be justified in doubts whether, in this country, where the subject is in 8 great measure res integra, such contracts could be supported, mon especially when the temper of our legislature respecting every species of gaming can be so well understood, by a recurrence to various statutes upon that subject.
It would seem a disgraceful occupation of the courts of any country, to sit in judgment between two gamblers, in order to decide which was.the best calculator of chances, or which had the most cunning of the two. There could be but one step of degrada *16 tian below this—which is, that the j edges should be the stake-holders of the parties.
In this case, however, collecting the meaning of the parties from the whole of the transaction appearing on the record, or referred to by it, I think it most manifest that a policy on interest, and not a wager policy, was intended. I collect this intention,—
1st. From the circumstance that, at the time of executing this policy, the assured was interested in the cargo, though to an uncertain amount. This appears by the payment made to him, on account of the loss, by the company who are concerned in the prior policy.
2d. From the nature of the voyage, which was contrary to the laws of Spain. It therefore became necessary to suppress those papers which are usually required to prove property on board, This will account for the stipulation that the policy should itself be evidence of property, without necessarily supposing that the parties meant to enter into a contract, the legality of which, to say the least of it, is very questionable.
[ * 7 ] * 3d. From the transactions under the other policy ; for it seems that, with a similar memorandum, the assured received, in discharge of the company, a sum proportioned only to the amount of property on board, as eventually ascertained, and also received a return premium for so much as appeared eventually to have been over-insured. It is true that the memorandum on this policy was explained not to constitute a wager policy. Under the same circumstances, I do not see why the other should not receive the same interpretation. A mere wager policy is that in which the party assured has no interest in the thing assured, and could sustain no possible loss by the event insured against, if he had not made such wager. This is not such a case, for the party assured did expect that he had on board property to the amount intended to be assured, and actually had, some property on board, though less than he expected, at the time.
I therefore consider this not to be a wager policy, but a policy on interest — the memorandum relied upon amounting to nothing more than an agreement that the usual evidence of property should not be required, but the parties always presuming that such property was actually on board. In this view of the subject, the express condition of this policy being, that it shall cease to operate upon so much of the property as may be found to be insured by any prior policy,—a prior policy being found by the jury, on which the plaintiff acknowledges he has received the full amount of all his hderest in the cargo, deducting a pro rata premium, and also *17 acknowledges that he had received a return premium for a large sum over-insured, — it seems clear to me that he is not entitled, upon any principle, to recover in this action.
Thatcher, J., concurred for the same general reasons.
Sedgwick, J.
It is to be regretted that the several documents referred to in this verdict, or so much of them as is material to present, in one view, all the facts which are necessary to be considered by the Court, in drawing the legal inference which is to result from the facts found in the case, are not, instead of being referred to, inserted in the verdict. This should always be done ; * because, otherwise, the record of the judgment, [ * 8 1 which ought always, where it decides a principle of law, to display its own evidence, will be unintelligible, if the papers to which reference is made should be lost; and besides, it will frequently happen that' the reference to extraneous facts, as is, in some degree, the present case, will leave it uncertain in what view they were contemplated by the jury, and to what extent they are to be considered by the Court. I shall, however, in this case, consider the several papers referred to in this verdict, as far as may be necessary to consider them at all, in the same manner I should, were they recited at length in it.
This policy is expressed to be made for Mr. 'Thomas C. Amory, “ for whom it may concern,” (which expression will hereafter be noticed,) and it contains the following express condition: “ that the subscribers shall be discharged from every risk, in case,” &c., (vide this condition in page 1.) From this recital, nothing can be more evident, than that it was the intention of the contract to confine the liability of the underwriter to a responsibility only for property at risk; for he was “ to be discharged from every risk in case the property should be wholly assured by any policy, or policies, actually prior to this.” How, then, are the facts ? This is an insurance on the cargo only. The policy which is found by the verdict to be made on the 11th of June had secured, on the same cargo, 3000 dollars, and the plaintiff has actually received the whole amount of his interest on board the ship on this voyage. Not only so, but, by Mr. Amory’s receipt endorsed on the back of the same policy, it appears also that he received from the underwriters 450 dollars 86 cents, “return premium for short property.” By this statement it appears, then, indisputably true, that, when the policy on the cargo was subscribed by the defendant on the 17th of June, it had been previously wholly assured by the policy underwritten on the 1 1th of the same month, and the subscriber to the former was therefore “ discharged from every risk.” Bv the very terms of the contract, then, the defendant is discharged, and the plaintiff cannot support *18 his action upon the policy. The remaining question is, [ * 9 ] whether, by the agreement made between the parties on * the 11th of August, 1800, and endorsed on the policy, the original contract is so varied, or a new contract formed, whereby the plaintiff is entitled to recover.
It was agreed by the parties, by an endorsement on the policy subscribed by them, that the sum, insured by the policy was warranted free of average, the insurer relinquishing the benefit of salvage; that the policy should be deemed proof of interest, and that no part of the premium should be returned for want of interest. From this it would appear, was nothing further in the case, that it was the intention of the parties to convert the original contract into a wager policy. But a further explanation is made by the deposition of Keyran Walsh, which the jury have found to be true, and made part of ' their verdict. It is unnecessary to state particularly the facts which are disclosed by this deposition. It will be sufficient to observe, that all the transactions relative to this voyage, from Tenerife, where the insurance commences, until the departure of the ship from La Vera Cruz for the Havana, where she had liberty to touch and trade, were intended to be masked. Although the whole interest was American, and intended to be continued such, yet it was to appear to be Spanish. Under these circumstances it was uncertain what, in fact, would be the interest of the assured; and it might be very difficult to ascertain its amount. Thence it became desirable to obviate the necessity of proof; and this was probably a principal motive in entering into the agreement of the 11th of August. But, in the view which I have taken of the subject, it is not very important to ascertain what was the real intention of the parties; if either was their intention, that the policy should, that agreement notwithstanding, continue, as originally designed, ar insurance upon the interest of the assured, — or that it should be converted into a wager policy, interest or no interest. If it be considered an insurance upon the interest of the insured, it has already been proved that the plaintiff cannot recover, because his whole interest in the subject of the insurance had been covered by a prior policy, and he had actually received therefor full satisfaction. Of course, it only remains to be considered whether, if it c.e construed a wager policy, the plaintiff can recover.
[ * 10 ] * This is a very important question, and now, for the first time, comes before this Court. Whetner it be consistent with the dignity of the law to lend its aid to give effect to any wagers on an idle question, in which the parties have no in-ten st except that created by the wager itself, it is not necessary upon this occasion to inquire. I shall confine my opinion merely to *19 wager policies. Had there beén a course of judicial decisions, either in England before the settlement of this country, or hers since that time, I should have felt myself bound by them. But how is this fact? Mr. Park says that the practice of insuring ideal risks has only prevailed since tire revolution, that is, long after the settlement of this country. Indeed, in the year 1692, it was determined, in the case of Goddard vs. Garrett, (1) and it is there said that “ thf3 law is settled that, if a man has no interest, and insures, the insurance is void, although itbe expressed in the policy, interested or not interested. And the reason the law goes upon is, that in surances are made for the encouragement of trade, and not that persons unconcerned, not interested in the ship, should profit by them. The reason why the law allows that a man having some interest in a ship or cargo may insure more, or five times as much, is, that a merchant cannot tell how much, or how little, his factor may have in readiness to lade on board his ship.” It was eighteen or twenty years after this before a contrary doctrine crept in, and by means, of which we have no information. Now, I understand that the common law, which our ancestors imported with themselves, was composed of such principles and maxims as were, at that time, established in the mother country, and applicable to their character and circumstances. There is no evidence that wager policies had been at that time enforced in courts of justice, but, as far as appears from the case of Goddard vs. Garrett, contrary decisions had obtained, and the practice seems little consonant to the circumstances or character of the emigrants. I have already stated that the question now, for the first time, comes before this Court, and, from what I have observed, it is to be determined on general principles.(a)
* The common law, which gives to the parties an in- [ * 11 ] terest in contracts, which courts of justice are bound to protect, does not extend to such interests as are injurious to the public. Is it, then, for the public benefit that contracts of wager policies should be enforced ? I think not. Mr. Park, who has considered the subject of insurance with profound intelligence, disapproves, upon principle, of this species of contracts. (2) And Sergeant Marshall, who, in his treatise, displays a vigorous understanding and mature judgment, details, more at length, the mischievous effects of this kind of gambling. He says, “ Many are the contrivances which men have fallen upon for the gratification *20 of their propensity to gaming ; and the uncertain events of maritime adventure afford an obvious and extensive field for the calculation of chances, and the decision of fortune. The practice of gaming, by nourishing a constant hope of gain, excites in the mind an interest which engrosses the attention, and withdraws the exertions of men from useful pursuits. By pointing out a speedy, though hazardous, mode of accumulating wealth, it produces a contempt foi the moderate, but certain, profits of sober industry. It perverts the activity of the mind, taints the heart, and depraves the affections. By frequent and great reverses of fortune, it becomes not only the source of great private misery, but suggests constant temptations to fraud, and the perpetration of atrocious crimes.” (3)
After reflecting on these observations, which every man of experience, and a knowledge of the human character, knows to be well founded, there can, I think, remain no doubt that it would be hostile to the welfare of society that interests, which men may choose to create by such contracts, should be protected by judicial authority. Much additional weight is given to the argument by the British statute (4) prohibiting wager policies. It is the authority of a wise legislature of a nation most deeply interested in commerce, and best understanding its interests ; and it prohibits them, because they are “ productive of many pernicious practices.”
[ * 12 ] * As, then, we are not bound, in this case, by authority, but are at liberty to decide on principle, —and as the plaintiff must recover, if at all, as on a wager policy, — I feel much satisfaction in saying that judgment must be rendered for the defendant. But, as the counsel for the plaintiff has relied on the words that the insurance was made “for whom it may concern,” I think it proper to observe, that those words can have no effect, because there is no evidence that any one was concerned except Mr. Amory.
Dana, C. J.
The papers in this case, excepting only the special verdict, not having been furnished me by the parties, I have prepared no written opinion. Having, however, seen the opinions of my brethren, and agreeing with them in the essential points, as well as the reasons in general on which they found their opinions, I have not thought it necessary to delay the judgment for the purpose of making a more particular statement of the grounds of the judgment which I have formed in the case. This last policy, including me memorandum endorsed, I think, cannot be considered as an insurance on interest, and must therefore be construed, from the terms of it, to be a wager policy. If it were to be deemed an insurance on interest, there is sufficient evidence, from the plaintiff’s receipt *21 endorsed on the prior policy mentioned in the verdict, and which makes a part of the case, that the plaintiff has been wholly satisfied to the amount of whatever property he had at risk in this voyage, and has received a partial return of premium, on account of his interest overvalued. He cannot, therefore, be entitled to recover in this action on the ground of a real loss. But it is said, and indeed is a fact very generally known, that property, adventured in voyages like this, is always covered as Spanish property, and that .the real owner, the assured, cannot exhibit the proof of property usually required and given in other voyages : and therefore that this agreement, that the policy shall be evidence of property, amounts to no more than a consent of the parties to dispense with the ordinary evidence uf property, and that the assured shall be presumed, without proof, to have property on board to the amount insured. By the exception in the statute * 19 G. 2, [ * 13 ] c. 37, respecting this kind of commerce with the dominions of Spain and Portugal, the Parliament were aware that their subjects were trading with those countries contrary to the laws thereof, and, not being disposed to throw any obstructions in the way of such trade, on their part, left the law, as far as these voyages were concerned, as it stood before. Foreigners were left to enforce their own regulations ; and the British subjects to pursue, at their own discretion, a commerce alike profitable to themselves and the revenue. It does not appear, in this case, what was the amount of the plaintiff’s property on board this ship at the time of the loss. But, whatever it was, he acknowledges himself to have been completely indemnified for his loss. I doubt whether either party considered this policy, including the memorandum endorsed, as a wager policy. But it appearing, in fact, that the assured had no insurable interest not covered by the prior policy, it must be so considered by the Court. As on a wager policy, my present opinion is, that the plaintiff cannot recover. No precedent of such an action supported here has been produced, and I believe none can be produced. We must, therefore, decide this on general principles of justice apd good policy. The very forcible reasons, set forth in the preamble of the statute (5) to which I have before referred, apply equally to this and every other civilized and well-governed commercial country. Whether that statute extended to this country or not, is a question not necessary now to be determined. But if it were, and we should find no precedents in our own courts to overrule us, I should be prepared to say that, as wager policies are injurious to the morals of the citizens, tend to encourage an extravagant and *22 peculiarly hazardous species of gaming, and to expose their property, which ought to be reserved for the benefit of real commerce, they ought not to receive the countenance of this Court,
Amory for the plaintiff.
Otis and C. Jackson for the defendant.
Some stress has been laid by the plaintiff’s counsel on the words “ whom it may concern,” and it has been suggested that, by these words, the property of some persons other than the plaintiff, [ * 14 ] whose agent he might be, may have been intended to * be . insured by this policy. It is a sufficient answer to this suggestion, that no such fact appears in the verdict, and we are not at liberty to presume it. I therefore concur with my brethren in opinion that the plaintiff cannot recover in this action. (a)

Costs for defendant.

 2 Vern. 269.

 At common law, insurances without interest were lawful. — Lucena vs. Crawford, 2 N. R. 269.— Cousins vs. Nantes & Al. 3 Taunt. 513.— Good vs. Elliot, 3 D. & E. 693. — Juliet vs. Church, 2 Johns. Cas. 333.

 Park, 161.

 1 Marsh, 95

 19 G. 2, c. 37.

 19 G 2, c. 37

 Vide Stetson vs. The Mass. Mut Ins. Co. 4 Mass. Rep. 330. — Hemenway vs. Eaton, 13 Mass. Rep. 108. — Dumas vs. Jones, 4 Mass. Rep. 647. — Pearson vs. Lord, 6 Mass. Rep. 81.— Cooledge vs. The Gloucester M. I Co. 15 Mass. Rep. 341