# CHARLES HENELLEY and J. A. CHAMBERLAIN
## *vs.*
# RITTENHOUSE, FOWLER & COMPANY.

1. A and B made a joint deposit of money at their bankers as security to cover losses in the buying and selling of stocks. Besides this deposit each of them had with the same banker a separate deposit to his own credit, which each agreed might also be held as security. Subsequently these deposits were claimed by the banker to pay losses alleged to have been incurred. A and B disputed the claims and brought a joint action for money had and received to recover these separate deposits. *Held*, That a joint action could not be sustained, the case being like that of joint borrowers of money, each pledging separate property as security, the loan being satisfied, each party is entitled to have his own property returned to him.
2. Where one voluntarily, and with a full knowledge of the facts of a disputed transaction, pays a sum of money in settlement thereof, he will be bound by his act, unless there has been fraud in the case.

At Law. No. 2491. Decided February 7, 1870.

MOTION by defendants for a new trial on a bill of exceptions in an action by two joint plaintiffs to recover of the defendants the sum of $10,000, money had and received for the use of the plaintiff. The defendants pleaded the general issue, and on this issue the cause was tried.

Messrs. RIDDLE and DAVIDGE for plaintiff.

Messrs. BRADLEY and COX for defendant.

Mr. Justice WYLIE delivered the opinion of the Court:

This controversy grew out of one of those gambling transactions in stocks, as to which it were a good policy, perhaps, for a court of justice not to meddle, except in the exertion of its criminal jurisdiction. We heartily approve the sentiment expressed by Mr. Justice Barker, in Armory *vs.* Gilman, 2 Mass. R., 6, that " it would seem a disgraceful occupation of the courts of any country to sit in judgment between two gamblers in order to decide which was the

best calculator of chances.   There would be but one step of degradation below this, which is that the judges should be the stakeholders of the parties."

And Serjeant Marshall is equally indignant on the subject.   He says: "The practice of gaming by nourishing a constant hope of gain excites in the mind an interest which engrosses the attention and withdraws the exertions of men from useful pursuits.   By pointing out a speedy, though hazardous, mode of accumulating wealth, it produces a contempt for the moderate but certain profits of sober industry. It perverts the activity of the mind, taints the heart and depraves the affections.   By frequent and great reverses of fortune it becomes not only the source of great private misery, but suggests constant temptations to fraud and the perpetration of atrocious crimes."   1 Marsh. Jus., 95.

That the present controversy grew out of a stock gambling contract we have no manner of doubt.   These short sales of stock, although made up of margins put up and involved in the manifold maneuvers of borrowing stock from day to day, to be returned the next, on the deposit of securities and a multitude of other devices to give a seeming of reality to the transactions until their culmination in the " closing out " operation, are games of chance mingled with skill, in which the honest, the unsuspecting and the simple are made the victims of the cunning, the sharp and the unscrupulous.   They belong to no class of legitimate business, neither to that of productive labor, nor to that of trade and commerce, which consist in the exchange of commodities, nor to any other business growing out of the necessities or convenience of society.

They possess not one redeeming quality of utility, but their influence is only evil, both morally and materially.

The operations of stock gamblers in New York, along with their affiliations over the whole country during the recent rebellion, cost this Government, most probably, at least one year of additional war, a thousand millions of

dollars, and a multitude of precious lives; and their annual cost since the close of the war to the fair and honest productive industry of the country has amounted, probably, to a sum not less than the interest on the national debt.

Is not this a vice of monstrous size and costly support, and ought it not to be treated by the courts and all honest people as an outlaw and an enemy to society?

Entertaining these views, it is with extreme reluctance and only because we feel constrained by the force of precedents to assume jurisdiction in the present controversy.

In May, 1865, these two plaintiffs entered into an agreement with the defendants that the latter should sell short Erie stock for them, in the city of New York on a deposit made and to be kept up of 20 per cent. on the par value. Besides the joint deposit each of the plaintiffs had a separate deposit to his own credit at the defendants, and each agreed that these separate deposits might be held by the defendants as security or margin to protect them from loss in carrying out the agreement.

Or the 10th of January, 1866, the plaintiffs were informed and the fact was so that they had been "closed out." The result of the operations in selling Erie short was that the whole amount to the joint credit of the plaintiffs had been absorbed by the losses, and there was a balance besides due to the defendants of $3,049.64 for which they claimed to have a lien on the individual credits of these respective plaintiffs. No settlement was effected until the 31st of March.

Hennelley, one of the plaintiffs, then agreed to give his check in favor of the defendants for $1,247, but protested at the time against the right of the defendants to claim the payment on the ground that, as he said, they had violated the contract.

The other plaintiff, Chamberlain, at the same time had a like amount, $1,247, to his individual credit at the defendants, but refused to give them his check for it

for the same alleged reason.    Defendants, however, applied his money towards the payment of their claim.

The present action was brought by Hennelley and Chamberlain jointly to recover those two sums of money, and the only count in the declaration is for money had and received.

We think it quite manifest that the present action cannot be maintained.    If these parties have a right to their money at all it must be on the ground that it was not liable to any claim on the part of the defendants for losses in the stock operations, and that all their obligations had already been discharged.    If that were so, it left each man's deposit to be claimed and sued for by himself.

And a prayer to this effect was granted by the court, subject, however, to a qualification which was wholly repugnant.    That qualification is in these words : " Unless upon the whole evidence the jury shall find that the balance standing to the credit of Chamberlain in his individual account was by him embarked as margin and held as such by the defendants in the stock transaction by the joint understanding of all the parties, in which case said balance is to be treated as if carried to the credit of the plaintiffs in their stock account."    We think there was error in this qualification of defendants' third prayer.

It is like the case of two joint borrowers of money, each pledging separate property as security for the loan.    The loan being satisfied, the creditor's lien is at an end, and each party is entitled to have his own property returned to him ; a joint action for the whole, or rather of the shares, could not be sustained.

We think the court was in error, also, in rejecting the fifth and sixth of defendants' prayers.    They are to the same point and identical in substance.    The latter is in these words : " If the plaintiff, Hennelley, voluntarily and understandingly settled the account of the joint stock transactions as presented to him, by paying the balance shown

7DC—6

to be due or a part thereof as his proportion, he is not entitled to recover any deposits made by him on that account."

We do not perceive the error of this prayer, but it was rejected by the court.

As to the other rulings of the court below, to which exception was taken, we find no error, unless possibly in the qualification to the defendants' fourth prayer which seems to make the validity of the settlement made between the plaintiffs, respectively, and the defendants, on the 31st of March, to depend upon the private views and purposes of the plaintiffs, not communicated to the defendants at the time or entering into the consideration of the settlement between them.

A party who voluntarily and with a full knowledge of the facts in regard to a disputed transaction between himself and another person, pays the latter a sum of money in settlement, will be bound by his act, unless there have been fraud in the case, even though such other person be the depositary of his funds, whatever may have been his own secret motives in making the settlement.

The judgment below must be reversed, and a new trial awarded. But unless the plaintiffs shall be able to establish by other evidence than that which they produced at the late trial of this cause, the existence of a joint right to the money in dispute, a new trial would hardly be profitable in the present condition of the pleadings and issue.

*Judgment reversed, and a new trial granted.*