## William Wilkinson

### vs.

### George M. Tousley.

A wager upon the result of a horse race is illegal and invalid, as against good morals, and sound public policy.

Money bet upon an illegal wager may be recovered by the loser, of the stakeholder, if before paying it over to the winner. the stakeholder has been notified by such loser, not to pay it over, and the loser has demanded its repayment to himself.

The plaintiff in this action appeals to this court from a judgment of the district court for Nicollet county, entered upon an order sustaining a demurrer to the complaint. The case is fully stated in the opinion of the court.

E. St. Julien Cox for Appellant.

Swan & Bangs for Respondent.

*By the Court*—Berry, J.—Plaintiff and one John Farmer laid a wager upon the result of a horse race, each depositing with the defendant as stakeholder the sum of one hundred dollars, to be paid to the winner, plaintiff or Farmer, as the case might be. The race resulted unfavorably for the plaintiff, and after it had taken place, but before the money deposited had been paid over to Farmer, plaintiff notified defendant not to pay it over, and demanded the return of the sum of one hundred dollars deposited by himself, with which demand defendant refused to comply.

Plaintiff brings this action to recover said sum, and the case comes to this court upon appeal from the judgment entered upon an order sustaining a demurrer to the complaint, upon the ground that it did not state facts constituting a cause of action. In the view which we take, the foregoing are the only facts stated in the complaint material to be considered.

The first inquiry is, was the wager a valid contract? The English courts have held that at the common law contracts of wager were valid, unless affected by some special cause of invalidity; that they were not void *qua* wagers, but if made on indifferent subjects or questions, an action lay upon them against the loser. *Good xs. Elliot*, 3 *T. R.* 693; *Chitty on Contracts*, 494; *Ball vs. Gilbert*, 12 *Met.* 399. But as remarked by Mr. Chitty, "the courts have frequently reprehended these contracts, and expressed their regret that they have ever been sanctioned." *Chitty on Contracts*, 496, *and cases cited.* See opinion of Mr. Justice Buller and Lord Kenyon in *Good vs. Elliot, supra; Gilbert vs. Sykes*, 16 *East.* 156; *Atherford vs. Beard*, 2 *T. R.* 615, *et seq.*; *Forbes vs. Waltham*, 1 *Ad. & El. N. S.* 889; *Evans vs. Jones*, 5 *M. & W.* 82. In this country the courts have expressed their views upon the subject of wagers generally in very strong language. In *Amory vs. Gilman*, 2 *Mass.* 6, which was an action upon a wagering policy of insurance, Parker J. says: "It would seem a disgraceful occupation of the courts of any country, to sit in judgment between two gamblers in order to determine which was the best calculator of chances, or which had the most cunning of the two. There could be but one step of degradation below this, which is, that the judges should be the stakeholders of the parties." See also *Ball vs. Gilbert*, 12 *Met* 399. In *Collamer vs. Day*, 2 *Vt.* 146, which was an action founded upon

Wilkinson v. Tousley.

a bet that a certain chaise was the property of A. B., the court say, "this is probably the first action that has ever called upon a court in this state to sanction such a contract of betting.

"The judges of the courts in England have expressed their regret of late years, that such transactions ever received the sanction of a court of justice, but they yield to the force of law which they consider settled by a train of decisions extending down from remote antiquity. We feel no such embarrassment; nor are we willing to transmit any such embarrassment to our successors; nor diffuse into society the influence of a rule so demoralizing as would be the sanction of such a contract. * * * The good morals of society require that no encouragement should be afforded to the acquisition of property otherwise than by honest industry. Time might be occupied in seeking occasions to take advantage of the unwary, and acquiring a skill to take such advantage, which ought to be devoted to better purposes." The court accordingly refused to recognize the bet as a valid contract. See also *West vs. Holmes*, 26 *Vt.* 534. In *Perkins vs. Eaton*, 3 *N. H.* 155, C J. Richardson says: "On the whole it is not to be doubted that at the common law an action might under certain circumstances be maintained for a wager; but the question is whether the common law on this subject has ever been adopted in this state. It is not known that an action of this kind has ever been before brought in this state; and this circumstance seems to indicate a general impression among the members of the bar, that such an action cannot be maintained, for wagers have certainly not been uncommon among us We are not precluded then by adjudged cases from adopting the rule of the civil law, and holding that a wager upon a subject in which the parties have no interest is a void con-

tract.  Many English judges have regretted that the same
rule has not been adopted in that country, and we have no
doubt that the better part of the community here would
regret that any countenance should be given to a wager of
this kind in our courts of justice.  We have come to the
conclusion that the rule of the common law on this subject
has not been adopted in this state, and that a wager upon a
subject in which the parties have no interest is not a valid
contract."  And in *Hoit vs. Hodge*, 6 *N. H.* 104, where the
wager was upon a horse race, the same judge says: "the
wager in this case was upon a matter in which neither
party had any interest beyond what was created by the
wager itself," and it was held not enforceable.  See also
*Clark vs. Gibson*, 12 *N. H.* 387, in which Gilchrist J.
speaks of wagers as "gambling transactions."  See also
*Rust vs. Gott*, 9 *Cowen* 175, note (*a.*)  In *Wheeler vs.
Spencer*, 15 *Conn.* 30, Hinman J. speaking of wagers says:
"The general understanding of the profession  *  *  has
been that they would be held to be illegal as being contrary
to the principles of morality and against sound policy."
In South Carolina, in *Laval vs. Myers*, 1 *Bail.* 486, it is
held that all wagers are unlawful and not to be recovered
in the courts of justice.  And in *Rice vs. Gist*, 1 *Strobhart*
486, O'Neall J. in delivering the opinion of the court says,.
"If the judge had charged the jury that the bet (which
was as to whether certain sales amounted to $7,000 or not)
had an immoral tendency, I should have entirely agreed
with him.  For every bet of this, or any other kind, tends
directly to beget a desire of possessing another's money or
property without an equivalent.  Men acted on by such
influences may easily become gamblers; and then the road
to every other vice is broad and plain;" and he proceeds to
speak of the probable tendency in the case before him as,

Wilkinson v. Tousley.

"an immoral tendency, hateful, horrible and deformed, and one against which the law should as sedulously guard, as against any other. I agree fully," he adds, "and so do a large majority of the court; in the opinion of the recorder as expressed in *Laval vs. Myers*, 1 *Bail.* 486, that all wagers are unlawful, and not to be recovered in the courts of justice. * * * No one can read the English books without feeling that the judges *there* loathe the fetters with which they are bound on this subject, and that they most seriously desire to say, if they could, wagers are unlawful, and cannot be recovered." Referring to certain cases in which wagers had been sustained in that state under an exception in the statute, which he says are no authority in favor of other wagers, he closes his opinion in these words: "But I am prepared hereafter to declare them unlawful on their clear immoral tendency, and thus to sweep from our courts the whole body of wagers, great and small." So in Maine, it appears that all wagers are held illegal. *Lewis vs. Littlefield*, 3 *Shipley* 233, and in Pennsylvania, *Edgell vs. McLaughlin*, 6 *Wharton* 176.

From the foregoing citations; from the statutes which have of late years been enacted in England, and in the various states of this country against bets and wagers; as well as from the common knowledge of the prevailing public sentiment on this subject, we think the remark found in 2 *Sm's Lea. Cases* (*6th Am. Ed.*) 343, that "the moral sense of the present day regards all gaming or wagering contracts as inconsistent with the interest of the community, and at variance with the laws of morality," is abundantly justified. The only case which we find reported in this state on the subject of wagers is *Cooper vs. Brewster*, 1 *Minn.* 94, in which it was held, that a bet upon the result of an election was illegal and void. In determining then

what is the law upon this subject here, we are free to lay down such rules as are most in accordance with general principles, and with the best considered and most wholesome views which have been expressed by other tribunals. Now, although, as already remarked, it has been held by the courts of England that wagers were not void at common law, *qua* wagers, the doctrine of all the English authorities. from *Atherfold vs. Beard*, *supra*, down to this day, is that they were void if contrary to good morals, or sound public'policy. From the standpoint from which the subject of wager contracts was viewed by the courts in England at the time when it was originally determined as a rule of law that wagers upon indifferent subjects or questions were valid contracts, they were not regarded as contrary to good morals, or sound public policy. And this rule having become established has been followed, though as remarked by LeBlanc J. in *Gilbert vs. Sykes*, 16 *East.* 156, " it has often been lamented that actions upon idle wagers should ever have been maintained in courts of justice." The practice seems to have prevailed before that full consideration of the subject which has been had in modern times. Whether it was necessary for the English courts to follow such a rule, after having clearly ascertained that it rested upon an unsound foundation, we need not inquire ; but in announcing a rule where none has been before announced, the question is whether we shall blindly adopt a doctrine which is admitted to have been originally wrong, both in morals and in law, and from which the courts of England would gladly escape were they not hampered by precedents, or whether we shall give full scope to the broad principle, that contracts contrary to good morals, and sound public policy, are invalid, and that therefore wagers, as contracts of that character, are not to be sustained. We have no hesitation in

Wilkinson v. Tousley.

adopting the latter course. And instead of resting our conclusion upon the ground taken in New Hampshire and Vermont, that the common law upon this subject has not been adopted here, we prefer to say that the rule by which these wager contracts have been tolerated was a perversion of the common law, and contrary to one of its fundamental principles; that it was based upon a false and mistaken notion of good morals, and sound public policy, and that as all such contracts are condemned by the more enlightened views of morality and public policy which now prevail, they ought to be condemned by the courts. This is not to disregard or abrogate the common law, but to restore and to follow one of its acknowledged principles, from which the English courts have manifestly departed. We therefore hold the wager in this case illegal and invalid.

The other question presented by the case at bar is, whether money bet upon an illegal wager can be recovered by the loser of the stakeholder, if before paying it over to the winner, the stakeholder has been notified by such loser not to pay it over, and the loser has demanded its repayment to himself. There is a remarkable approach to unanimity in the authorities in answering this question in the affirmative. *Ball vs. Gilbert,* 12 *Met.* 397; *McAllister vs. Hall,* 6 *S. & R.* 148; *Tarleton vs. Baker,* 18 *Vt.* 9; *Wheeler vs. Spencer,* 15 *Conn.* 28; *West vs. Holmes,* 26 *Vt.* 534; *Perkins. vs. Eaton,* 3 *N. H.* 155; *Whitwell vs. Carter,* 4 *Mich.* 329, *and numerous cases cited;* 2 *Sm's Lea. Cases,* 345. The reason for allowing the recovery is well stated by Shaw C. J. in *Ball vs. Gilbert, supra,* as follows: " we think it clear that in no proper sense can the stakeholder be regarded as a party to the illegal contract, or *in pari delicto.* He is a mere depositary of both parties for the money deposited by them respectively, with a naked

authority to deliver it over on the proposed contingency. If the authority is actually revoked before the money is paid over, it remains a naked deposit to the use of the depositor." Speaking of the case before him which related to a wager upon the result of an election, he continues: " We think the money deposited by each party was a simple naked deposit, respecting which the agreement to pay it over to one according to the result of the pending presidential election, and not executed by actual payment, was wholly inoperative and void, and then by implication of law the money was so deposited to the use of the depositors respectively; and that an action for money had and received would lie for each party for the amount so deposited for him."

It follows from the views expressed by us, that the complaint in this case stated a cause of action, so that the respondent's demurrer to the same was improperly sustained.

Judgment reversed.