DETERMINED IN

# THE SUPREME COURT

OF THE

## TERRITORY OF NEW MEXICO.

### JANUARY TERM, 1876.

ANTHONY JOSEPH *v.* FREDERICK MILLER AND
JOSEPH CLOUTHIER.

SPECIAL PLEAS OF FACTS ADMISSIBLE UNDER GENERAL ISSUE.—It is not such
error as will afford ground for reversing a judgment that the court be-
low sustained a demurrer to certain special pleas, alleging facts constitut-
ing a bar to the action, where the same facts could be given in evidence
under the general issue also pleaded.

WAGERING CONTRACTS VOID.—Wagering contracts are void on sound princi-
ples of law and public policy; therefore, a note, the sole consideration for
which is a wager on the result of a horse-race, can not be collected.

HORSE-RACE A "GAMBLING DEVICE."—A horse-race is a "gambling device"
within the meaning of sec. 4. c. 36, p. 246, of the Compiled Laws of New
Mexico, and therefore a note given for a bet on a horse-race is made void
by that section.

APPEAL. The opinion states the case.

*T. B. Catron,* for the appellant. 1. Horse-racing is
prohibited by statute, and a note when the consideration
is a wager on a horse-race is void: Comp. Laws New Mex-
ico, sec. 4, p. 246, whole act; Rev. Stat. Mo. 539, whole
act; *Shropshire* v. *Glascock et al.,* 4 Mo. 536; *Boyanton*
v. *Curle,* Id. 599; *Hayden* v. *Little,* 35 Id. 422. These
cases give a construction to the statutes of Missouri from
which our statute is copied, ours being much stronger in

terms than that of Missouri, having inserted the additional word "gambling;" also *Lynall* v. *Longbothom,* 2 Wils. 40; *Goodburn* v. *Marley,* 2 Str. 1159, and in the construction of our statutes. 2. A bet on a horse-race is contrary to public policy and good morals, and not collectible: *Hayden* v. *Little,* 35 Mo. 422; *Wilkinson* v. *Tousley,* 10 Am. Rep. 141, and cases there cited.

*Breeden and Waldo,* for the appellees: Wagers on horse-racing are not illegal at common law: 1 Tex. 89; 1 Morris (Iowa), 169; 1 Tenn. 56; 4 Johns. 425 [S. C., *Bunn* v. *Riker,* 4 Am. Dec. 292]; 10 Id. 406; 31 Mo. 35; Cowp. 729; 23 Ark. 726; 8 Tex. 10; 6 Id. 454; 1 Id. 89; 6 Cal. 359. Horse-racing, by a fair interpretation of our statute, does not come within the prohibition. The rule of *expressio unius* applies; if there be many things of the same class or kind, the expression of one or more of them implies the exclusion of those not expressed: Parsons on Cont., 3d ed., p. 28. The same rule governs in the construction of statutes as in contracts: Potter's Dwarris, 175, 178. So far as being against public policy, there is a wide range for discussion, and it is difficult to perceive anything intrinsically vicious in the running or racing of horses; besides there are many strong reasons for sustaining it. It has a strong tendency to encourage the improvement of the breed.

By Court, BRISTOL, J.:

Appellees brought an action in the court below to recover the amount alleged to be due on a promissory note in the original sum of two hundred dollars, made and delivered by the appellant in Taos county to one Frank M. Willburn, payable to his order and indorsed by him and delivered to appellees. Appellant pleaded the general issue, also special pleas to the effect that the note sued on was given solely in consideration of a wager in the sum of two hundred dollars, upon the result of a horse-race; that the note for that purpose was placed in the hands of Frederick Miller, one of the appellees, as stakeholder, to be delivered to said Willburn, in case the appellant lost such wager; that the appellant

by unfair means lost such wager at the horse-race, and that the note thereupon was delivered by such stakeholder to said Willburn, and that of all of which facts the appellees had due notice.

To these special pleas the appellees interposed a general demurrer, which was sustained by the court below, and the appellant excepted thereto.   The cause having come on for trial in the court below upon the general issue, the appellant offered evidence to prove substantially the facts alleged in such special pleas, except unfairness practiced at the horse-race.   This evidence being objected to the court below sustained the objection, and the appellant excepted thereto.   Judgment was rendered in favor of the appellees, who were plaintiffs below, for the amount of the note and costs.

The cause is here on writ of error.   The only questions for review in this court are: 1.  Did the court below err in sustaining the demurrer to the special pleas?  and, 2.  Did the court err in ruling out said evidence?   We are of the opinion that there was no such error in sustaining the demurrer, as will justify this court in modifying the proceedings in the court below, for the reason that, even if it be conceded that the special pleas demurred to allege facts constituting a bar to the action, it is clear that evidence of those facts could be given under the general issue.   The ruling of the court below in excluding the evidence offered on behalf of the appellant fairly brings before us the question whether a promissory note, made and delivered as a wager upon the result of a horse-race, is such a contract as the court in law ought to lend its aid to enforce.

It is claimed on behalf of the appellees that such a contract is neither in contravention of the common law in force in this territory nor of the statute in relation to gambling debts.   Upon a review of the authorities we are of the opinion that neither of these propositions is tenable.   It is true that the courts of England have held that at common law wager contracts upon different subjects of chance are valid.   But we gather from various adjudications, both in England and in those states in this country where the English prece-

dents on this subject have been followed and adopted as common law, that the judges of their courts, while reluctantly yielding to the force of ancient precedents, and to what they regard as settled thereby as common law, have often expressed their regret that wagering contracts of any kind ever received the sanction of the courts: Chit. on Cont. 496; 16 Minn. 299; 10 Am. Rep. 139; 10 Johns. 406; 3 N. H. 155.

These pointed expressions of regret are but admissions that, as a principle of the common law, the validity of such contracts ought never to have been recognized by the courts. In some of the states of the Union, among the more notable of which is New York, courts have followed and adopted as common law the English precedents on this subject; while in others, among which are the New England states, Pennsylvania, South Carolina, and Minnesota, the common law on this subject, as recognized in England, has not only not been adopted, but repudiated by their courts. Judge Parker, in the case of *Amory* v. *Gilman*, 2 Mass. 6, which was an action to recover a wager, expressed what every sensible jurist must feel, when he remarked that: "It would seem a disgraceful occupation of the courts of any country to sit in judgment between two gamblers, in order to determine which was the best calculator of chances, or which had the most cunning of the two; there could be but one step of degradation below this, which is that the judges should be the stakeholders of the parties."

In the case of *Collamer* v. *Day*, 2 Vt. 146, which was an action on a simple wager of the least objectionable sort, the court, after referring to the expressions of regret by English judges that such transactions were ever sanctioned by the courts, and that they only yield to the force of precedents, say: "We feel no such embarrassment, nor are we willing to transmit any such embarrassment to our successors, nor diffuse into society the influence of a rule so demoralizing as would be the sanction of such contract. * * * The good morals of society require that no encouragement should be afforded to the acquisition of property otherwise

than by honest industry." The court held that the wager was not a valid contract.

The most exhaustive opinion upon this subject that has been presented, or that we are able to find, is that given by the court in the case of *Wilkinson* v. *Tousley*, 16 Minn. 299 (*vide* S. C., 10 Am. Rep. 139), wherein the authorities on the subject are collected, and ably commented upon. In that case, after referring to the authorities, the court say: "From the foregoing citations from the statutes which of late years have been enacted in England, and in the various states of this country, against bets and wagers, as well as from the common knowledge of the prevailing public sentiment on this subject, we think the remark found in 2 Sm. Lead. Cas. (6th Am. ed. 343), that 'the moral sense of the present day regards all gaming or wagering contracts as inconsistent with the interests of the community, and at variance with the laws of morality,' is abundantly satisfied. * * * In determining, then, what is the law upon this subject here, we are free to lay down such rules as are most in accordance with general principles, and with the best considered and most wholesome views which have been expressed by other tribunals. * * * In announcing a rule where none has been before announced, the question is whether we shall blindly adopt a doctrine which is admitted to have been originally wrong both in morals and in law, and from which the courts of England would gladly escape, were they not hampered by precedents; or whether we shall give full scope to the broad principle, that contracts contrary to good morals and sound public policy are invalid, and that, therefore, wagers and contracts of that character are not to be sustained. We have no hesitation in adopting the latter course." This was an action like the one before us, upon a wager between the parties upon the result of a horse-race, and it was held that such a contract was void.

Being untrammeled by precedents, this being the first adjudication of the kind in this territory, we do not hesitate to lay down the same rule as to wagering contracts here. Not only do we hold that wagering contracts are void on sound principles of law, as being opposed to public policy and

goods morals, but we hold also that contracts of this kind are void under the statute. Section 4 of chapter 36, page 246, of the Complied Laws of New Mexico, provides that "all judgments, securities, bonds, bills, notes, or conveyances, when the consideration is money or property won at gambling, or at any game or gambling device, shall be void," etc. The word gambling is a word of very general application, and is not restricted to wagering upon the result of any particular game or games of chance. In the adjudicated cases on this subject, we find that judges often have applied this word indiscriminately to wagering of all kinds. We are unable to discover any distinction in general principle between the various methods that may be adopted for determining by chance who is the winner and who the loser of a bet—whether it be by throwing dice, flipping a copper, turning a card, or running a race. In either case it is gambling. This is the popular understanding of the term "gambling device," and does not exclude any scheme, plan, or contrivance for determining by chance which of the parties has won, and which has lost a valuable stake. That a horse-race, when adopted for such a purpose, is a "gambling device," there can be no doubt: *Shropshire* v. *Glascock and Garner*, 4 Mo. 536, and cases there referred to.

The judgment of the court below, therefore, is set aside, a new trial granted, and judgment for appellant for his costs in this court.