## O. H. DEAVER V. C. A. BENNETT.

[FILED JULY 1, 1890.]

1. **Wagers:** RECOVERY FROM STAKEHOLDER. Money wagered on the result of a horse race may be recovered from the stakeholder by the party depositing the same if, before the stake is paid over to the winner, a demand has been made upon the stakeholder for its return.

2. **The petition** examined, and *held*, to state a cause of action.

3. **Pleading.** An indefinite allegation in a pleading cannot be corrected by demurrer. The remedy is by motion to make more definite and certain.

ERROR to the district court for Harlan county. Tried below before GASLIN, J.

*C. C. Flansburg,* and *L. H. Kent,* for plaintiff in error:

In 1887, sec. 214, Crim. Code, was so amended as to omit the words "bet or wager." Under the statute in its present form, therefore, horse racing is not included. It is neither a gambling device, nor a game of hazard or skill. (*Harless v. U. S.,* Morris [Ia.], 169*; *Harrison v. State,* 4 Coldw. [Tenn.], 195; *State v. Rorie,* 23 Ark., 726; *Shropshire v. Glasscock,* 4 Mo., 36; *State v. Hayden,* 31 Id., 35; *State v. Lemon,* 46 Id., 375; *Shelton's Case,* 8 Gratt. [Va.], 592; *Dunman v. Strother,* 1 Tex., 89; *McElroy v. Carmichael,* 6 Id., 456; *Ellis v. Beall,* 18 Me , 337; *Pierce v. Randolph,* 12 Tex., 295; *Johnson v. Fall,* 6 Cal., 359; *State v. Hardin,* 1 Kan., 477.) Nor was betting on a horse race illegal at common law. (*Bunn v. Riker,* 4 Johns. [N. Y.], 426; *Campbell v. Richardson,* 10 Id., 406; *Van Valkenburgh v. Torrey,* 7 Cow. [N. Y.], 252; *Gibbons v. Gouverneur,* 1 Denio [N. Y.], 170; *Porter v. Day,* 71 Wis., 299, and cases.)

*J. L. Roberson,* and *H. J. Whitmore, contra:*

Horse racing is a game of chance, hazard, or skill, both at common law and under our statutes. (*Perry v. Gross,* 25 Neb., 826; *Tatman v. Strader,* 23 Ill., 493; *Garrison v. McGregor,* 51 Id., 473; *Mosher v. Griffin,* Id., 184; *Ellis v. Beall,* 18 Me., 337; *People v. Weithoff,* 16 N. W. Rep., 442.) Either party to the wager may claim money paid to the stakeholder and still in his possession. (*Alexander v. Mount,* 10 Ind., 161; *Burroughs v. Hunt,* 13 Id., 178; *Little v. Brannenburgh,* 4 Id., 35; *Stacy v. Foss,* 19 Me., 335; *Barrett v. Neill,* Wright [O.], 472; *Hale v. Sherwood,* 40 Conn., 334; *Wheeler v. Spencer,* 15 Id., 32; *Adkins v. Flemming,* 29 Ia., 122; *Wilkinson v. Tousley,* 16 Minn., 299.) If the stakeholder pay it out after notice from the proper party not to do so, he will be liable for the amount. (*Shannon v. Banner,* 10 Ia., 210; *Thrift v. Redman,* 13 Id., 25; *Batson v. Newman,* 1 C. P. D. [Eng.], 573; *Diggle v. Higgs,* 2 Ex. D., 422; *Conklin v. Conway,* 18 Pa. St., 329; *Humphreys v. Magee,* 13 Mo., 435; *Stacy v. Foss,* and *Wheeler v. Spencer, supra; Whitwell v. Carter,* 4 Mich., 329; *Hardy v. Hunt,* 11 Cal., 343; *Cleveland v. Wolff,* 7 Kan., 184; *Riddle v. Perry,* 19 Neb., 505; 7 Wait's Act. & Def., 88–9.)

NORVAL, J.

This action was commenced in the county court of Harlan county by C. A. Bennett, the defendant in error, to recover $400 from Oscar H. Deaver, the plaintiff in error, for money deposited by Bennett with Deaver as stakeholder as a wager on a horse race. The petition filed in that court states "that plaintiff on or about the 11th day of August, 1888, made a wager with one W. J. Fitch, upon the result of a certain horse race which afterwards was to take place on the race track in the town of Orleans, and thereupon plaintiff and said Fitch each paid over to the defendant

Oscar Deaver the sum of $400 to abide the result of said race; and that afterwards said race took place, and, by the said decision of the judges in said race, the plaintiff lost said wager. Plaintiff further alleges that he notified said stakeholder, Oscar Deaver, not to turn over said money to said Fitch, which the said Deaver refused to do, but paid the same over to Fitch, who still holds the same. Wherefore the plaintiff prays judgment against said defendant for $400 and interest from August 11, 1888, and costs of suit."

The defendant demurred to the petition, alleging that it did not state sufficient facts to constitute a cause of action. The demurrer was overruled, and the defendant electing to stand on his demurrer, a judgment was rendered for the plaintiff for $400. To reverse the judgment the defendant prosecuted error to the district court where the judgment was affirmed. The case is here on error.

Two questions are raised by the demurrer:

First—Can money which has been deposited with a stakeholder as a wager on the result of a horse race be recovered by the party depositing the same, from the stakeholder, if demanded after the wager is decided and before the money has been paid to the winner?

Second—Does the petition allege that a demand was made before the money was turned over by the defendant to Fitch?

The legislature, in 1887, amended section 214 of the Criminal Code to read as follows:

"Every person who shall play at any game whatever for any sum of money or other property of value, or shall bet any money or property upon any gaming table, bank, or device prohibited by law, or at or upon any other gambling device, or who shall bet at any game played at or by means of any such gaming table or gambling device, shall, upon conviction, be fined in any sum not less than one hundred dollars and not exceeding three hundred dollars, or be imprisoned in the penitentiary not

more than one year ; and upon a second or any subsequent conviction shall be fined in any sum not less than three hundred dollars and not exceeding five hundred dollars, or be imprisoned in the penitentiary not more than two years; *Provided,* That if any person or persons who shall lose any property or money in a gambling house or other place, either at cards or by means of any other gambling device or game of hazard of any kind, such person, the wife or guardian of such, his heirs, legal representatives, or creditors, shall have the right to recover the money, or the amount thereof, or the property. or the value thereof, in a civil action, and may sue each or all persons participating in the game, and may join the keeper of the gambling house or other place in the same action, who shall be jointly and severally liable for any money or property lost in any game or through any gambling device of any kind, and no title shall pass to said property or money, and in an action to recover the same no evidence shall be required as to the specific kind or denomination of money, but only as to the amount so lost."

The plaintiff insists that he is entitled to recover the money under the proviso clause of the above quoted section, claiming that horse racing is a "game of hazard." As we construe the language of this section it has no application to the case at bar. It only authorizes a recovery against the persons participating in the game, and the keeper of the gambling house or other place where the money or property was lost. It is evident that where the stakeholder takes no part in the game, an action cannot be maintained against him under this statute. (*Riddle v. Perry,* 19 Neb., 505.) The petition does not allege that the defendant took a part in the race. Whether money lost on the result of such a race can be recovered from the persons participating therein we do not decide, as the question does not arise in this case.

There being no legislative enactment authorizing the

maintenance of this suit, can the plaintiff recover under the principles of the common law? A similar case was before this court at the January term, 1886, in the case of *Riddle v. Perry, supra.* The then Chief Justice Maxwell, in the opinion filed in that case, says: "At common law, where the wager is illegal, either party may claim the money deposited by him from the stakeholder, even after the wager is decided against such party, if the demand is made before the money is, actually paid over. If, however, the stakeholder has paid the money over to the winner before notice or demand upon him by the loser, he is exonerated, and no action will lie against him by the loser to recover the same."

Undoubtedly that is a correct statement of the law on the subject, and it is well sustained by the decisions of the highest courts of the other states. (*Collamer v. Day,* 2 Vt., 146; *Tarleton v. Baker,* 18 Id., 1; *Stacy v. Foss,* 19 Me., 335; *Ball v. Gilbert,* 12 Met., 397; *Perkins v. Eaton,* 3 N. H., 155; *Wilkinson v. Tousley,* 16 Minn., 299 (263); *Bledsoe v. Thompson,* 6 Richardson's Law, 44; *Cleveland v. Wolff,* 7 Kan., 184.)

The statute in force when the cause of action in *Riddle v. Perry, supra,* occurred, made betting on a horse race a penal offense, and it is conceded that that law was repealed by the legislature in 1887, when it adopted the above quoted section 214 of the Criminal Code. That case is, therefore, not authority now, unless contracts of wager on the result of a horse race are illegal when not declared so by legislative enactment.

The rule at the common law was that all wagering contracts that were contrary to good morals or public policy were illegal and void. The courts of England at an early day held that betting on a horse race was not opposed to good morals. The courts of that country reluctantly followed this early precedent, until the common law interpretation of wagering contracts was changed by the statutes of

8 and 9 Victoria, which made all contracts of wager void. Is betting on the result of a race contrary to good morals? We are not bound by the decisions of the courts of England, in determining that question. Whether a thing in the eyes of the law is moral or immoral may depend largely upon when and where it occurred. An act may be upheld as moral in one country and be regarded as immoral in another. A wager contract might have been sustained a hundred years ago as being in conformity with good morals, and be condemned to-day as immoral. In this country, betting on a race is now generally regarded as against sound morals. As a general rule, the courts of this country, in the more recent decisions, have refused to enforce all waging contracts, even though they are not declared illegal by statute. Such contracts are certainly against good morals, a detriment to society, and, under the principles of the common law are illegal and void.

The case in all its facts like the one at bar is *Wilkinson v. Tousley*, 16 Minn., 299. In that state, as in this, the betting on the result of a horse race is not made illegal by statute. The court held in that case that the wager was illegal and that the money was recoverable from the stakeholder by the loser. Berry, J., in delivering the opinion of the court, after reviewing the decisions of the court of England and this country on the subject, says: " From the standpoint from which the subject of wager contracts was viewed by the courts in England at the time when it was originally determined as a rule of law that wagers upon indifferent subjects or questions were valid contracts, they were not regarded as contrary to good morals, or sound public policy. And this rule having become established has been followed, though, as remarked by LeBlanc, J., in *Gilbert v. Sykes*, 16 East [Eng.], 156, ' It has often been lamented that actions upon idle wagers should ever have been maintained in courts of justice.' The practice seems to have prevailed before that full consideration of the subject which has been

52

had in modern times. Whether it was necessary for the English courts to follow such rule, after having clearly ascertained that it rested upon an unsound foundation, we need not inquire; but in announcing a rule where none has been before announced, the question is whether we shall blindly adopt a doctrine which is admitted to have been originally wrong, both in morals and in law, and from which the courts of England would gladly escape were they not hampered by precedents, or whether we shall give full scope to the broad principle that contracts contrary to good morals and sound public policy are invalid, and that therefore wagers, as contracts of that character, are not to be sustained. We have no hesitation in adopting the latter course; and, instead of resting our conclusion upon the ground taken in New Hampshire and Vermont, that the common law upon this subject has not been adopted here, we prefer to say that the rule by which these wager contracts have been tolerated was a perversion of the common law, and contrary to one of its fundamental principles; that it was based upon a false and mistaken notion of good morals and sound public policy, and that as all such contracts are condemned by the more enlightened views of morality and public policy which now prevail, they ought to be condemned by the courts. This is not to disregard or abrogate the common law, but to restore and to follow one of its acknowledged principles, from which the English courts have manifestly departed. We therefore hold the wager in this case illegal and invalid."

In *Bledsoe v. Thompson*, 6 Richardson's Law, 44, the plaintiff sued to recover money deposited by him with the defendant as stakeholder, as a wager on a horse race. The wager was decided against the plaintiff, who notified the defendant not to pay the money over, but the defendant paid the money afterwards to the winner. The supreme court of South Carolina held the contract illegal and that the plaintiff could recover his money, notwithstanding the

statutes of that state did not make betting on such a race a penal offense. To the same effect are *Perkins v. Eaton*, 3 N. H., 152; *Hoit v. Hodge*, 6 Id., 104; *Stacy v. Foss*, 19 Me., 335; *Wheeler v. Spencer*, 15 Conn., 28; *Hale v. Sherwood*, 40 Id., 332; *Cleveland v. Wolff*, 7 Kan., 184.

A wagering contract being illegal, either party to it may retrace the illegal step and demand his money or property put up at any time before it is turned over to the winner. The stake does not belong to the winner until received by him, nor does it belong to the stakeholder. While in the hands of the stakeholder it belongs to the party depositing it. This case, therefore, falls within the rule laid down in *Riddle v. Perry, supra*, and is governed thereby.

The point is made that the petition does not allege that a demand was made for the money before it was paid over. The petition states that the plaintiff notified the defendant not to turn over the money to Fitch, which he refused to do, but paid it over to Fitch. While the allegations of the petition in regard to the demand made by the plaintiff are not very full and definite, yet we think it sufficiently appears that the money had not been paid over when the defendant was notified that the plaintiff claimed it. If the defendant desired a more definite statement of the facts he should have filed a motion for that purpose. The allegations are sufficient to resist a demurrer.

The judgment of the district court was right and is

                                        AFFIRMED.


THE other judges concur.