# Bailey's Adm'r *v.* Campbell.

*Statutory Action in nature of Ejectment.*

1. *Purchase at tax-sale by tenant.*—A purchase of land at tax-sale by a tenant operates only as a payment, and confers on him no title as against his landlord, or one claiming under the landlord; nor does he acquire any title by purchasing the certificate issued to another person as purchaser, and afterwards procuring a deed as assignee.

2. *Cancellation of deed, on rescission of contract.*—When a contract for the sale of lands is rescinded by agreement, the deed to the purchaser and his notes for the purchase-money being mutually surrendered and

[Bailey's Adm'r v. Campbell.]

cancelled, this does not operate a divestiture of the legal title, nor revest it in the vendor.

3.  *When plaintiff may recover.*—In ejectment, or the statutory action in the nature of ejectment, the plaintiff must show title in himself, unless the defendant occupies the position of a tenant, who can not dispute his landlord's title.

4.  *Landlord and tenant; when relation exists.*—The relation of landlord and tenant may be created by express contract, or may be implied from the conduct of the parties; but it will not, ordinarily, be inferred from the mere fact of occupation, if this *status* can be so explained as to be referable to any other distinct cause or relation.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. HENRY C. SPEAKE.

This action was brought by James Bailey, against Richard Campbell, to recover the possession of a tract of land containing about 320 acres; and was commenced on the 24th June, 1882. The plaintiff died before the trial, and the action was revived in favor of E. A. Bailey as his administrator. The defendant pleaded not guilty, the statute of limitations of five years under a tax-deed, and adverse possession for three years, with the erection of valuable improvements; and issue was joined on these several pleas. On the trial, as the bill of exceptions shows, the plaintiff adduced several deeds executed in 1848, 1854, and 1858, respectively, by which a fee-simple title to different parts of the land was conveyed to his intestate, said James Bailey; and proved that said Bailey "continued in possession of the land, though his tenants, until January, 1874, when he abandoned the possession, under a contract of purchase by W. L. Roddy, and the defendant then went into possession." The defendant, testifying as a witness for himself, stated that "he went into the possession of the land, in January, 1874, as the lands of W. L. Roddy, who had made a contract of purchase with, and bought said land from said James Bailey;" that he paid rent to Roddy during the years 1874, 1875, and 1876, as per contract between them; "that said Roddy placed in his possession the contract of purchase from said Bailey, which witness understood to be a deed, the execution of which by said Bailey was not proved; that this document was placed in his hands that he might know the boundaries of the land he occupied; that said Bailey came to his house on the land, on or shortly after the 20th September, 1876," and brought him a note or order from Roddy, directing him to "deliver that deed to Mr. Bailey, and take up my [his] notes;" that he accordingly delivered the deed to Roddy, received from him Roddy's notes for the purchase-money, and afterwards returned them to Roddy; "that he then

learned from Bailey, in the conversation had between them, that the trade between him and Roddy was cancelled, and the land was Bailey's; that he (witness) remained on the land, and afterwards, in the latter part of the year 1876, purchased from one N. A. Son a certificate of purchase at tax-sale." This certificate, which was afterwards produced, recited a purchase of the land at tax-sale by said "N. A. Son, agent," on the 13th April, 1874; but the assignment to the defendant was dated September 1st, 1874. On this certificate, and its assignment, a deed for the land was executed to the defendant by the probate judge of Madison, which was dated March 7th, 1877; and the defendant testified, that he informed Bailey, "in the fall of the year 1877," that he claimed the land under this deed. Roddy testified, that Bailey informed him, at the time the contract between them was made, that the taxes on the land for the year 1873 were unpaid, and agreed to allow them, if paid by Roddy, as a credit on the notes for the purchase-money.

The court charged the jury, among other things, " that it did not matter how the defendant obtained the possession of the land; that the statute of five years would begin to run from the time he openly and notoriously held and claimed the land under the tax-deed; that it was not necessary he should have gone into possession under the purchase at the tax-sale, but the statute would apply, if, being in possession in another right, he afterwards held openly and adversely, and claimed under the deed." The plaintiff excepted to this charge, and requested several charges in writing, among which was the following : "(5.) There is no legal evidence in this case that the land sued for has been sold for the non-payment of taxes, and therefore the statute of limitations of five years has no application." The court refused this charge, and the plaintiff excepted to its refusal.

The charges given, and the refusal of the charges asked, are now assigned as error.

D. D. SHELBY, and R. W. WALKER, for the appellant, cited Hilliard on Taxation, 563; Cooley on Taxation, 379, note 4; 2 Desty on Taxation, 927-8, 934-5; *Waln v. Shearman,* 8 Serg. & R. 356; *Gilman v. Riopelle,* 18 Mich. 145; 28 Kans. 292; Burr. Tax. 352.

JNO. D. BRANDON, *contra,* cited Taylor's Land. & Tenant, § 129; 1 Jones on Mortgages, § 777; *Comer v. Shehan,* 74 Ala. 452; *Lankford v. Greene,* 52 Ala. 103; *Shumaker v. Nelms,* 25 Ala. 126; *Weaver v. Jones,* 24 Ala. 126; *Bell v.*

*Ellis*, 1 Stew. & P. 294; *Duncan v. Potts*, 3 Stew. & P. 82; Adams on Ejectment, 143-4; 69 Ala. 332.

SOMERVILLE, J. — The record shows that the tax-deed, under which the defendant claims to have been in adverse possession, was executed, delivered, and recorded in March, 1877, or more than five years before the commencement of this suit. 1t may, therefore, be conceded that a *prima facie* case for recovery has been made out in favor of the defendant, admitting, as the evidence tends to prove, that he has continued in open and adverse possession of the land during the entire period.—*Hughes v. Anderson*, 79 Ala. 209, and cases there cited.

But it is contended that, when the defendant acquired the certificate of purchase by assignment from the purchaser at the tax-sale—upon which his tax-deed was based—he occupied a relation towards the owner of the land which disqualified him from acquiring such an interest. One Roddy was then owner, and the defendant was his tenant. This was in the year 1874. The tax-sale had taken place April 13, 1874; and the tax-deed was delivered in March, 1877, after Roddy had made an arrangement with Bailey (from whom he had originally bought the land), by which he sought to cancel the trade by delivering the deed back to his vendor, and taking up his notes for the purchase-money, without a reconveyance of the title. The legal effect of this attempted cancellation, and of defendant's continuing to hold the premises, we shall consider further on in this opinion.

The contention of the plaintiff, as we have said, is, that the relation of the defendant towards the then owner of the land, Roddy—as tenant and landlord—was such as to disqualify the defendant from taking an assignment of the tax-certificate, and that such assignment was, therefore, in the eye of the law, a *payment*, and not a purchase. There are several relations of this kind, operating to produce such effect, among which are included principal and agent, trustee and *cestui que trust*, tenants for life, tenants in common, mortgagors and mortgagees in possession, landlord and tenant, and some others. The reason of the rule has sometimes been said to be, that the relation of the parties imposes on them the duty of paying taxes assessed against the property in which each has an interest. In whosesoever name the assessment may be, the tax is assessed and levied on the land itself, including the interest of all claimants, and the purchaser at a valid tax-sale acquires the fee. *Jones v. Randle*, 68 Ala. 258. "A purchase by one whose

duty it was to pay the taxes, operates as payment only; he can derive no benefit as against a third party, by the neglect of the duty he owed such party."—*Blake v. Howe*, 15 Amer. Dec., *note*, p. 684, and cases cited; *Johnson v. Smith*, 70 Ala. 108; Cooley on Tax. 346. "The principle running through all the cases," says Mr. Burroughs, "is, that when it is the duty of the party to pay the taxes, he can not acquire a title founded on his own default."—Burroughs on Tax. 353, 354. Some of the adjudged cases hold, that a tenant in possession may purchase the landlord's reversionary interest at tax-sale, as he may at execution sale, unless he is under contract to pay the taxes, thus creating the duty. The current of authority seems, however, to be the other way. This will appear from the cases cited by Mr. Freeman in his note to *Blake v. Howe*, 15 Amer. Dec. 684–690, *supra*, where, on page 690, he observes: "The relation of landlord and tenant is of such a nature as to disqualify either from acquiring title under a tax-deed. Although it is the duty of the landlord to pay the taxes, in the absence of any agreement to the contrary between the parties; yet the tenant will not be permitted to take advantage of the omission of his landlord to pay the taxes, to terminate the relation between them and obtain title to the land.—*Curtis v. Smith*, 42 Iowa, 665. The remedy of the tenant," he concludes, "is rather to discharge the assessment, and deduct the amount from the rent." Perhaps, the sounder reason, after all, is, that the presumption of law would be that a tenant, who takes an assignment of a certificate of purchase, or even buys at a tax-sale, does so for the protection of his own interest, which, as we have shown, would be equally affected with the reversionary interest of the landlord, just as in the analogous case of mortgagor and mortgagee, where the tax-sale overrides the interest of the one as well as that of the other.—Cooley on Tax. 347, 348. The result would be, that every attempted purchase made by a tenant of rented premises at a tax-sale would operate merely as a *payment* of the tax, and not as a valid purchase. And the payment of the tax due on lands, prior to their sale for delinquent taxes, even though made under a judgment of the Probate Court, is a good defense to an action of ejectment brought for the lands. No sale can be supported, where it is made to appear that no taxes were due at the time of such sale.—*Watson v. Kent*, 78 Ala. 602. Under these views, if the evidence was believed, the defendant could base no valid defense upon his tax-deed. That would be eliminated from the case, he being estopped

[Walker v. Johnson.]

to claim title under it. The fifth charge requested by the plaintiff should have been given.

The record tends to show, however, that the legal title of the land sued for was in Roddy, not in the plaintiff's intestate, James Bailey. A conveyance having originally been made to Roddy, if its execution be satisfactorily proved on another trial, the subsequent cancellation of the deed by him, without a re-conveyance of the legal title, would not divest such title.—*Smith v. Cockrell*, 66 Ala. 64. Hence, the plaintiff will not be entitled to recover in this action, unless the defendant occupied towards the decedent the attitude of a tenant. This relation is founded on contract, express, or implied from the conduct of the parties. It will not, ordinarily, be inferred from the mere fact of occupation, if this *status* can be explained so as to be referable to any other distinct cause or relation.—*Hardin v. Pulley*, 79 Ala. 381 ; Taylor on Land. & Tenant, § 44. In the absence of a *deed*, or other *conveyance* from Roddy to James Bailey, section 2177 of the Code of 1876 has no application to the case. That section operates only to make every conveyance of real estate "good and effectual without attornment of the tenant." Whether such relation can be implied from the conduct of the parties in the present case, is a matter of inference for the determination of the jury, which must be left to them upon another trial.

These conclusions render the consideration of other questions unnecessary, in view of the new phase which the case may assume upon another trial. The rulings of the court were opposed to the principles above announced, and the judgment will be reversed and the cause remanded.