CHRISMAN v. HOUGH et al., *Appellants*.

Division One, November 15, 1898.*

1. **Conveyances:** KANSAS CITY: TAX DEED: MADE BY CITY TREASURER. Under the charter of Kansas City of 1875, the city treasurer was *ex officio* city collector, and when a sale of real estate was made for taxes, unless the property was redeemed within two years, the collector was required to make to the purchaser at the tax sale, a deed to the land. But by the charter of May, 1889, the city treasurer was empowered to make such deed. The sale in question was made in February, 1889, while the old charter was yet in force, and the time within which the owner of the property could redeem it did not expire until after the new charter was adopted. *Held*, that the city treasurer as such was the proper party to make the deed to the purchaser at the tax sale. The duty of the city to make such deed became absolute, and the purchaser could compel it to do so by suit for specific performance.

---

*NOTE.—Decided July 6, 1898; motion for rehearing filed; motion overruled November 15, 1898.

2.  ———: ———: ———: CERTIFICATE OF PURCHASE: ASSIGNMENT IN
    BLANK.   Where a purchaser at a tax sale writes his name on the back
    of the certificate of purchase and delivers it to the assignee, he thereby
    authorizes such assignee to write above his signature a formal assign-
    ment, if such be necessary.

3.  ———: ———: ———: NOT OPEN TO ATTACK.   A tax deed made
    under the charter of Kansas City, which had been of record three
    years before suit was brought to set it aside, is impervious to attack
    because of mere irregularities in the mode of sale.

4.  Deed of Trust: COVENANT TO PAY TAXES.   A mortgage authorizing
    the mortgagee to pay all taxes and giving him a lien on the land for
    the amount thus paid, imposes on him no duty towards the mortgagor
    to pay the taxes; but if he does not pay them and the land is sold for
    taxes and he becomes the purchaser, he can not set up his tax title
    against the rights of a mortgagee under a prior mortgage.   He may
    demand that the prior mortgagee reimburse him for the amount
    expended by him to protect the title from the tax incumbrance, but he
    can not go further than to ask that he and the prior mortgagee be each
    restored to the same relation in reference to the title which each held
    before the taxes became due.

*Appeal from Jackson Circuit Court.*—HON. E. L.
SCARRITT, Judge.

REVERSED AND REMANDED (*with directions*).

*New & Palmer* for appellants.

(1)   The tax deed from the city to Moise was valid
on its face and conveyed a good title.  Charter of Kan-
sas City 1875, art. 4, secs. 12, 20;  art. 6, secs. 45, 53,
63 and 64;  Charter 1889, art. 4, secs. 15, 22; art. 5,
secs. 37, 47, 57, 58; art. 17, sec. 8; *Eyerman v. Blakely*,
13 Mo. App. 407.   (2)   The deed being valid on its
face, plaintiff can not attack the deed for any mere
irregularities, more than three years having elapsed
between the recording of the tax deed and the bringing
of the suit at bar.   Charter 1875, art. 6, sec. 66; New
Charter, art. 5, sec. 60; *Hill v. Atterbury*, 88 Mo. 114;
*Bird v. Sellers*, 113 Mo. 580.    (3)   By the tax deed to
Moise the entire title to the property passed to him freed

from the incumbrance of plaintiff, as well as that of defendant Pasfield. *Eastman v. Thayer*, 60 N. H. 408. (4) Defendant Pasfield owed no duty to other parties in the suit to pay the taxes. Plaintiff might have paid the taxes and secured a lien therefor against the property had he desired. 1 Jones on Mortg., sec. 358; *Ib.* vol. 2, sec. 1080; *Boone v. Clark*, 5 L. R. A. 276; *Harrigan v. Wellmuth*, 77 Mo. 542. (5) Defendant Pasfield having lost his lien on the property by the tax deed, had the same right to purchase as anyone else. *Smith v. Lewis*, 20 Wis. 350; *Alexander v. Sully*, 50 Ia. 192; *Reinboth v. Zerbe Run Imp. Co.*, 29 Pa. 139; *Wright v. Sperry*, 21 Wis. 336; *Frentz v. Klostch*, 28 Wis. 312; Black on Tax Titles, p. 352. (6) Even if plaintiff could question validity of tax deed and wished to avail himself of the benefit of payment by Pasfield, his only right is a right to redeem. *Maxfield v. Sully*, 46 Mich. 252; *Ins. Co. v. Bolta*, 45 Mich. 113; *Ward v. Matthews*, 80 Cal. 343.

*Milton Campbell* for respondent.

(1) The tax sale was a nullity. (*a*) Neither Ben Holmes, the city collector, nor Horace G. McKim, his deputy, conducted the sale of 1888. Charter of Kansas City 1875, art. VI, secs. 42, 45, 52; 25 Am. and Eng. Ency. of Law, 289 and 383; Black on Tax Titles, secs. 105 and 110; *Brown v. Hogle*, 30 Ill. 119; *Hadley v. Chamberlain*, 11 Vt. 618; *Fremont v. Boling*, 11 Cal. 380; *Butler v. Nevin*, 88 Ill. 575. (*b*) Wm. T. Sheffield, a clerk, conducted the sale, instead of the specially appointed trustee, the collector. *Brickenkamp v. Rees*, 69 Mo. 428; *Bales v. Perry*, 51 Mo. 452. (*c*) That clerk made the auction a false pretense and farce, by making a list and then selling in rotation, and this mode was adopted by the bidders. Black on Tax Titles,

secs. 110 and 111; *Twombley v. Kimbrough*, 24 Ark. 459. (2) (*a*) The offices of city collector and city treasurer of the city of Kansas were distinct offices, although vested in one person, under the charter of 1875. *Webster v. Smith*, 78 Mo. 163; *Spurlock v. Dougherty*, 81 Mo. 171; *Lathrop v. Brittain*, 30 Cal. 680; *People v. Ross*, 38 Cal. 76; *Denver v. Hobart*, 10 Nev. 31. (*b*) Only one of these offices remained after May 9, 1889, that of city treasurer, whose power to make deeds is expressly confined to "real property sold under the provisions" of article V., Charter of 1889, by said city treasurer. Charter, secs. 40, 57 and 58. (*c*) There was no successor to the city collector authorized to act. *Webster v. Smith*, 78 Mo. 163; *Miller v. Williams*, 15 Gratt. 213; *Lathrop v. Brittain*, 30 Cal. 680. (*d*) Had such power ever existed, no deed could have been made to Lionel Moise on a certificate "assigned in blank," by Harrison. Charter 1875, art. VI, sec. 53; *Territory v. Perea*, 30 Pac. Rep. 928. (3) The conveyance of this lot to Samuel B. Hough, agent and trustee for George Pasfield, was "but a payment of the taxes, and an extinguishment of the tax title." *Frank v. Caruthers*, 108 Mo. 569. (*a*) Had Chase, the mortgagor, bought this tax title, it would have merely paid the tax. *Blackwood v. Van Vliet*, 30 Mich. 118. (*b*) Pasfield had the right, by the terms of his deed of trust, to pay those taxes. "May," in the deed, means "shall" since others were interested in such payment. *Steines v. Franklin Co.*, 48 Mo. 167; *State v. Saline Co. Ct.*, 48 Mo. 390; 14 Am. and Eng. Ency. of Law, 970, note 5. (*c*) Having the right created a duty which he could not neglect and thereby gain an advantage over the mortgagor or prior mortgagee. *Hall v. Westcott*, 15 R. I. 373; *Maxfield v. Willey*, 46 Mich. 252; *Moore v. Titman*, 44 Ill. 367; *Laughlin v. Green*, 48 Miss. 175; *Burchard v. Roberts*, 70 Wis. 111; *Ward v. Matthews*,

80 Cal. 343; *Bank v. Bacharach*, 46 Conn. 525. (*d*) Mortgagor, mortgagee, and subsequent mortgagee, have a unity of legal interest, making it highly inequitable for any one of them to act adversely to the others in the acquisition and use of tax titles. *Woodbury v. Swan*, 59 N. H. 22; Cooley on Taxation, p. 503–504; Desty on Taxation, p. 229.

BRACE, P. J.—On the seventeenth of October, 1885, Charles W. Chase, who was the owner of lot 17, block 2, E. L. Brown's subdivision, Kansas City, by deed of that date, in which his wife joined, conveyed said lot to W. H. Whiteside, trustee, to secure the payment of a promissory note of the said Chase of the same date, payable to H. L. Jamison six months after date, for the sum of $500, with interest from date at the rate of ten per cent per annum. Afterwards this promissory note was assigned by indorsement to the plaintiff, who brings this action to foreclose said deed of trust. This deed of trust was duly acknowledged, and recorded on the twenty-second day of October, 1885. Afterwards on the sixth day of February, 1886, the said Chase and wife, by their deed of that date, conveyed the premises to S. F. Scott to secure the payment of a promissory note dated the fifteenth of December, 1885, payable to George Pasfield two years after the date thereof, for the sum of $2,500, with nine per cent interest payable semi-annually. This deed of trust was duly acknowledged, and recorded on the fifteenth of February, 1886. Afterwards on the twentieth of November, 1890, Theodore S. Case, city treasurer of Kansas City, by deed of that date, duly acknowledged, and recorded on the eighth of December, 1890, in pursuance of a sale, made on the fourth of February, 1889, which sale was begun on the first Monday in November, 1888, by

the city collector for delinquent taxes for the year 1888, conveyed the premises to Leonil Moise. Afterwards on the twenty-fifth of January, 1892, the said Moise by quitclaim deed of that date, duly acknowledged and recorded on the twenty-sixth of January, 1892, conveyed the premises to S. B. Hough, and on the same day Chase and wife, by their quitclaim deed of that date, recorded also on the twenty-sixth of January, 1892, released all their interest in the premises to the said Hough. The suit was instituted on the seventeenth of February, 1894. Hough, Pasfield and Whitesides are made co-defendants with Chase and wife in the action. Hough and Pasfield alone answered, setting up title under the tax deed aforesaid, and averring that the title of Hough is held for the use and benefit of Pasfield. Issue was joined by reply. The issues were found for the plaintiff, and decree rendered in his favor against all the defendants foreclosing their equity of redemption, from which the defendants Hough and Pasfield appeal.

1. It is contended for respondents that the decree should be sustained on the ground that the tax deed is a nullity, for the reason that Case, the city treasurer, had no authority to execute it.

Under the charter of Kansas City of 1875, the city treasurer was *ex officio* city collector (Session Acts 1875, p. 212, sec. 20), whose duty it was to make sale of real estate for delinquent taxes, and upon such sale to give the purchaser a certificate of purchase which was assignable by indorsement. *Ib.*, p. 234, sec. 53. Real estate sold under the provisions of this act was redeemable "at any time within two years from the first day on which such real property was advertised for sale." *Ib.*, p. 235, sec. 55. If not redeemed within that time, it became the duty of the city collector, on presentation to him of the certificate of purchase, to

execute a deed to the purchaser, his heirs or assigns, in the form therein prescribed, under the seal of the city and attested by him as city collector. *Ib.*, pp. 236–7, secs. 63 and 64.    The sale was made, and the certificate of purchase issued under the provisions of this law by Benjamin Holmes, who was then city treasurer and *ex officio* city collector.    Afterwards, on the ninth of May, 1889, the Freeholders' Charter went into effect, whereby the charter of 1875 was superseded.    In the new charter the provisions of the old charter in regard to the sale of lands for delinquent taxes and the execution of deeds therefor to the purchasers were substantially re-enacted, the city treasurer remaining, as before, the collector of the taxes without any official designation as such, and as such treasurer was required to perform the same duties as before, and among them to execute tax deeds to purchasers in like form under the seal of the city attested by him as city treasurer.    Charter of Kansas City, 1889, secs. 57 and 58.    And so the deed in question was executed, under the seal of the city, by Case, then city treasurer, as such, when under the former law, had it been in force, it would have been executed by him as city collector, and from this it is argued that the tax deed is void for, want of authority in Case as treasurer to execute the same.

There is nothing in this contention.    When Kansas City passed from its old organization under the charter of 1875 to its new organization under the charter of 1889, there was a valid and subsisting contract between the municipality and the purchaser at this tax sale, to execute to him or his assignee a deed for this real estate, in case it should not be redeemed as provided in the charter.    It was not redeemed, and the duty of the city to make such deed became absolute, and specific performance of that duty could have been compelled by the purchaser or his assignee.

*Eyerman v. Blakesley*, 13 Mo. App. 207; Dillon, Mun. Corp. [4 Ed.], secs. 85, 171 and 172. This imperative duty was by the new charter devolved upon the treasurer of the city *eo nomine*, whose functions as such included all those performed by the same officer as city treasurer and *ex officio* city collector, under the old charter; and there can be no question but that the deed was duly executed in manner and form as required by the charter, and by the proper officer duly authorized to execute the same.

2. It is also contended that the certificate of purchase was assigned in blank by the purchaser Harrison, and for this reason the treasurer had no right to issue a deed thereon to Moise. The evidence tends to prove that Harrison indorsed the certificate of purchase, and that the formal assignment over his name was written by Moise, but whether at the time it was indorsed or afterwards, does not appear, but conceding that it was afterwards, that could make no difference in its effect to transfer the assignor's interest in the certificate to the assignee, or in the authority of the treasurer to act thereon. The purchaser, by writing his name on the back of the certificate and delivering it to Moise, authorized him to write above it a formal assignment if one had been necessary, but such formal assignment was not necessary, the certificate being by the terms of the charter made assignable by indorsement simply.

3. The deed was in the form required by the charter, and valid upon its face. It had been of record for more than three years before this suit was instituted, and was impervious to attack for such irregularities in the mode of sale, as are urged against it. Charter of Kansas City, 1889, secs. 58, 59 and 60. It is but justice to the officers who conducted the sale, however, to say that upon comparison of the evidence

with the charter, we find that the sale was conducted substantially in accordance with the requirements thereof. The decree can not be sustained on the ground that the tax deed was invalid.

4. The deed of trust from Chase and wife to Scott to secure the payment of the promissory note aforesaid to Pasfield, contained a covenant on the part of the grantors with Pasfield to pay all taxes that might thereafter be assessed and levied on the land, and in case of failure to do so, Pasfield was authorized to pay such taxes and for the repayment thereof, with interest, a lien was given upon the land. Hence it is argued that it was Pasfield's duty to pay the taxes for which the land was sold, and he can not set up the tax title purchased by him as aforesaid against plaintiff's right of action under his prior mortgage.

It was the duty of Chase, the mortgagor in possession, to pay the taxes. His personal covenant with Pasfield to pay them and in case of his failure, his authorization of Pasfield to pay and add the amount to his security, imposed no additional duty upon Pasfield to pay the tax in question. Without any such provision Pasfield had the right to pay the taxes, as did the plaintiff, the prior mortgagee, each for his own protection. Jones on Mortgages, sec. 358. And this covenant in no way affected the duties of either mortgagee to the other, or their relations *inter sese* to the property. Those relations and the rights and duties growing out of them may well be stated in the language of COOLEY, J., in *Ins. Co. v. Bulte*, 45 Mich. *loc. cit.* 121 and 122: "It certainly can not be said that the second mortgagee owes any duty to the first mortgagee to protect his lien as against tax sales. Neither on the other hand does the first mortgagee owe any such duty to the second mortgagee, or to the owner. To the State each one of the three may be said to owe

the duty to pay the taxes; and the State will sell the interest of all if none of the three shall pay. As between themselves, the primary duty is upon the mortgagor; but if he makes default, either of the mortgagees may pay, and one of the two must do so or the land will be sold and his lien extinguished. But in such cases, where each has the same right, payment by one is allowed to increase the amount of his incumbrance; for in no other way could he have security for its repayment by the mortgagor, who ought to protect the security he has given. When therefore each mortgagee has the same interest in making payment of the tax, and the same right to do so, and the same means of compelling repayment, it may well be held that a purchase by one shall not cut off the right of the other, because it is based as much upon his own default as upon that of a party whose lien he seeks to extinguish. It is as just and as politic here as it is in the case of tenants in common, to hold that the purchase is only a payment of the tax." While there is some conflict in the decisions upon this question, the weight of authority is in favor of such holding. 1 Jones on Mort. [4 Ed.], sec. 680; Black on Tax Titles [2 Ed.], 278 and 279; Cooley on Taxation [2 Ed.], 504; *Woodbury v. Swan*, 59 N. H. 22; *Hall v. Westcott*, 15 R. I. 373; *Bank v. Bacharach*, 46 Conn. 513; *Fair v. Brown*, 40 Ia. 209; *Garrettson v. Scofield*, 44 Ia. 35. As was said by BINGHAM, J., in *Woodbury v. Swan, supra:* "It is a general rule, founded on the requirements of good faith, that any one interested in land with others, all deriving their titles from a common source, can not acquire an absolute title to the land by a tax deed, to the injury of others. The payment of taxes by a mortgagee protects his interest, and for the protection of his interest he may acquire a tax title, but he can not set up that title to defeat a prior mortgage." A

title thus acquired by a second mortgagee "inures to the protection not the destruction of the general title," and no distinction on principle can be made between the case where such title is procured at first hands by purchase at the tax sale, and the case where the title is afterwards acquired by the second mortgagee from such purchaser. *Frank v. Caruthers*, 108 Mo. 569, and authorities *supra*. All that the second mortgagee can in equity and good conscience demand of the prior mortgagee is that he be reimbursed from the general estate for the sum thus expended in procuring a title which protects the interests of each, and restores that estate to its original standing, so far as their interest therein is concerned. Applying these principles to the case in hand the decree of the circuit court is reversed and the cause remanded with directions to enter a decree foreclosing the mortgages and ordering a sale of the premises, and that out of the proceeds of such sale after payment of costs, there be paid first, to the defendant Pasfield, the sum of $350, the amount paid by his agent Hough to Moise for the tax title on the twenty-fifth of January, 1892, with interest thereon from that date at the rate of six per cent per annum, next to the plaintiff the amount of the indebtedness secured by his mortgage, and the remainder to the defendant Pasfield. All concur.