265 P.2d 978

**KILPATRICK  v.  STATE.**

No. 5709.

Supreme Court of New Mexico.

Dec. 30, 1953.

Williams & Johnson, Hobbs, for appellant.

Richard H. Robinson, Atty. Gen., Wm. J. Torrington, Asst. Atty. Gen., for appellee.

LUJAN, Justice.

Defendant was convicted in the district court of Lea County of violation of the gambling laws of the state and he appeals.

The information was framed under Chapter 41, Article 22 of 1941 Compilation. Section 41-2201 provides:

"Gambling declared unlawful.—It shall hereafter be unlawful to play at, run, or operate any game or games of chance such as keno, faro, monte, passfore, passmonte, twenty-one, roulette, chuck-a-luck, hazard or * * * or any other game or games of chance played with dice, cards, punch boards, slot machines or any other gaming device by whatsoever name known, for money or anything of value, in the state of New Mexico.

"41-2202. Operating game—Ownership or possession of gambling materials or premises used for gambling— Penalty.—Any person who is the owner or possessor of any game mentioned in section 1 (§ 41-2201), or any person engaged in operating any such game, or knowingly supplying any such game with cards or dice or other device, or who is in actual possession and control as owner, lessee or otherwise of the premises upon which any such game is run or operated, or who shall knowingly lease premises so to be used, or who having leased such premises knowingly permits the same so to be used, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than five hundred ($500.00) dollars, nor more than one thousand ($1,000.00) dollars, and shall be imprisoned in the county jail for not less than three (3) months, nor more than six (6) months, or by both such fine and imprisonment.

"41-2203. Who deemed operator of game.—Any person, or the members of any organization or club who manages, controls, banks any such game, or who takes or receives any money or thing of value of (or) anything representing value for himself, themselves, or such organization or club, or for any other person from such game to buy drinks, cards or for expenses of the game or for running such game, or for any other like or similar purpose shall be deemed an operator of such game.

"41-2204. Playing at game—Penalty.—Any person who shall play at any of the games of chance mentioned in section 1 (§ 41-2201) of this act, shall be punished by a fine of not less than twenty-five ($25.00) dollars nor more than five hundred ($500.00) dollars, and shall be imprisoned in the county jail for not less than thirty (30) days nor more than six (6) months, or by both such fine and imprisonment."

The record discloses that the defendant is the owner of a cockfighting pit located approximately three miles from the city of Hobbs. The room is about 40 to 50 feet wide and 60 feet long. There are bleachers for the spectators. The cock pit is about 20 feet long. The defendant charged an admission fee of $2.44, per male person. On April 24, 1953, cock fights were conducted on said premises, attended by an estimated crowd of 150 to 200 persons. During the progress of these fights several bets were wagered on the cocks by the spectators among themselves. It was shown that on said date the defendant conducted a "Calcutta" pool whereby the owners of roosters were auctioned off to the highest bidder; and that on this occasion $335 was derived from the auction of the "Calcutta" pool which was turned over to the highest bidder, less 10% which was retained by the operator of the game.

A reversal of this case is urged upon eight grounds:

First: That the court erred in refusing to submit to the jury certain requested instructions.

Second: That the court erred in giving a certain instruction to the jury over his objection.

Third: That the court erred in admitting certain evidence over his objection.

Fourth: That the court erred in refusing to direct a verdict of not guilty.

The last proposition above stated will be first considered. It is contended that the evidence is wholly insufficient to sustain a conviction. We will not review the evidence; suffice it to say that we have carefully examined all of the evidence appearing in the record and are of opinion that there was a substantial conflict as to whether or not the defendant operated a game of chance for money in his premises on the night in question. This being so, it was for the jury to determine its weight, and also the credibility of the witnesses and it is not the duty of this court to do so. Melini v. Freige, 15 N.M. 455, 110 P. 563; Riverside Sand & Cement Manufacturing Company v. Hardwick, 16 N.M. 479, 120 P. 323; James v. Hood, 19 N.M. 234, 142 P. 162; Thayer v. Denver & R. G. R. Co.,

28 N.M. 5, 205 P. 733. In the instant case the jury believed the testimony of the state and disbelieved that of the defendant. Where there is a substantial conflict in the evidence the verdict of the jury will not be disturbed unless errors of law occurred upon the trial. Corkins v. Prichard, 3 N.M. (Gild.) 278, 3 P. 746; Lacey v. Woodward, 5 N.M. 583, 25 P. 785; State v. Sakariason, 21 N.M. 207, 153 P. 1034. As a general rule the court should not direct a verdict of acquittal where there is any evidence to support, or reasonably tending to support, the charge. 16 C.J., Criminal Law, p. 936, § 2299. State v. Martin, 53 N.M. 413, 209 P.2d 525.

■ There being substantial evidence to support the jury's verdict, the court did not err in refusing to direct an acquittal as requested.

■ The seventh assignment is to the effect that the court erred in admitting certain evidence, over his objections, of betting on fighting cocks among spectators without showing that the defendant participated therein and in refusing to admonish the jury to disregard such evidence. This assignment was not argued under any of defendant's points and it will therefore be considered abandoned. Robinson v. Mittry Bros., 43 N.M. 357, 94 P.2d 99; Pankey v. Hot Springs National Bank, 46 N.M. 10, 119 P.2d 636.

■ The sixth assignment is to the effect that the court erred in giving its instruction No. 3A which is as follows:

"Any person who manages, controls, or who takes or receives any money or thing of value from such game for the running of such game or for any other like or similar purpose shall be deemed an operator of such game."

By this instruction the court merely told the jury what constituted an operator of a game of chance and is substantially in the the language of the statute, and correctly states the law.

The first, second, third, fourth and fifth assignments are to the effect that the court erred in refusing to give to the jury five requested instructions. They are as follows:

"(3) You are further instructed that the mere playing or operating of a game of chance, unless it is for money or something of value, does not violate the provisions of the statute making it unlawful to play at or operate games of chance for money or anything of value.

"(4) You are instructed that on the date of the alleged offense it was not unlawful to hold chicken or cock fights in New Mexico, or to charge an admission fee for witnessing such fights and the taking or collection of admission fees by the defendant cannot be con-

strued as or constitute the taking of money or other thing of value for the operation of a game of chance, and if you find that such admission fees was the only money or thing of value which the defendant received from the operation of such chicken or cock fights, you must acquit him.

"(5) You are instructed that before you can find the defendant guilty of the offense charged, you must find beyond a reasonable doubt that he received money or other thing of value for himself other than the admission fees charged and collected by him for witnessing such chicken or cock fights.

"(6) You are instructed that defendant is not charged with being the owner or possessor of a game of chance being run or operated for money or other thing of value, or charged with being in actual possession and control as owner, lessee or otherwise of the premises where any such game is run or charged with knowingly leasing the premises to be so used, and all evidence introduced in the trial of this case of betting or wagering among the spectators and not participated in by the defendant should be disregarded by the jury in reaching its verdict.

"(7) You are instructed that rooster fighting is an ancient and honorable sport. Its traditions have been mellowed in the crucible of time and it has by reason thereof become one of the traditions of the southwest. By itself it is not unlawful and no censure of any kind may be in your mind against the defendant because you may find from the evidence he was a devotee of that sport. If its honorable traditions were traduced by the gambling of spectators, he cannot be held responsible for their acts unless you find and believe from the evidence beyond a reasonable doubt that he aided, abetted and profited from their acts."

The court, among other things, instructed the jury as follows:

"(2A) You are further instructed that the laws of this State define the unlawful operator of a game of chance as any person who manages or controls any such game, or takes or receives any money or thing of value or anything representing value for himself from such game.

"(2B) You are instructed that the laws of this State do not prohibit the playing or operation of a game of chance, but only prohibits the playing or operation of a game of chance for money or anything of value.

"(3) The statute of the State of New Mexico upon which this prosecution is based, except as to the punishment, reads as follows:—It shall be unlawful to operate any game of chance or gaming device by whatso-

ever name known for money or any-thing of value in the State of New Mexico.

"(3A) Any person who manages, controls or who takes or receives any money or thing of value from such game for the running of such game or for any other like or similar pur-pose shall be deemed an operator of such game.

"(4) If you believe from the evi-dence in this case beyond a reasonable doubt that the defendant, in Lea Coun-ty, New Mexico, on the 24th day of April, 1953, or at any other time with-in two years next prior to the 15th day of May, 1953, did unlawfully operate a game of chance for money or thing of value, then you will find him guilty as charged in the information: other-wise you will acquit him.

"(6–2) * * * So, in this case, if each and all of the material allega-tions as just outlined to you have been proved to your satisfaction and beyond a reasonable doubt, then you should find the defendant guilty as charged; but, on the other hand, if you have a reasonable doubt as to the truth of any one or more or all of the material al-legations as just outlined, then you should acquit the defendant.

"(7) You are instructed that a game of chance consists of a game whereby one who plays stands to win or lose money, trade or checks by hazard or chance."

In the case of Joseph v. Miller, 1 N.M. 621, we said:

"* * * The word gambling is a word of very general application, and is not restricted to wagering upon the result of any particular game or games of chance. * * * We are unable to discover any distinction in general principle between the various methods that may be adopted for determining by chance who is the winner and who the loser of a bet—whether it be by throwing dice, flipping a copper, turn-ing a card, or running a race. In ei-ther case it is gambling. This is the popular understanding of the term 'gambling device', and does not exclude any scheme, plan, or contrivance for determining by chance which of the parties has won, and which has lost a valuable stake. That a horse-race, when adopted for such a purpose, is a 'gambling device', there can be no doubt."

There was no error in refusing requested instruction No. 3, as the court accurately covered that issue by its instruc-tion No. 2B. The trial court is not bound to give requested instructions, which, even if correct, are merely cumulative, and state in another form a proposition of law al-

ready given to the jury. State v. Carabajal, 26 N.M. 384, 193 P. 406, 17 A.L.R. 1098; State v. Ulibarri, 28 N.M. 107, 206 P. 510.

Refused charge No. 4 is a correct proposition of law, but, as framed it might easily have misled the jury as to the point to be emphasized; viz., the aspect of the gambling feature in the conduct of cock fighting. This phase of the law was sufficiently covered by the court's instruction No. 4.

The court did not err in refusing to give defendant's requested instruction No. 5. The question involved in the request was sufficiently and accurately covered by the court's instructions Nos. 4 and 6-2, wherein the court told the jury that if they believed beyond a reasonable doubt that the defendant did unlawfully operate a game of chance for money or anything of value they should find him guilty; otherwise they should acquit him.

As to the claimed errors alleged to have been committed by the court in refusing to give defendant's requested instructions Nos. 6 and 7, we consider them not well taken. As to No. 6, the defendant acquiesced in the trial court's ruling that it presented a false issue, in that it related to an offense with which the defendant was not charged. Note the following colloquy between the court and counsel:

"The Court: Exception will be noted as to all those refused. No. 6, it seems to me like that is really confusing. This man is not charged under that section of the act. There is no attempt to charge him under the section 'Owner or Possessor.' * * * He is charged under 2201; you have referred to 2202, which is an entirely different thing. That will be refused.

"Mr. Williams: Which one is that, your Honor?

"The Court: No. 6. No. 7 will be refused.

"Mr. Williams: We would like to object to, except to State's instruction No. 3, sub-paragraph 3A * * *."

As to No. 7, we believe the court adequately covered the material issues of this request by its own instructions and did not err in refusing to give the same.

After a careful comparison of the several instructions given by the court we are convinced that the jury was fully and properly instructed upon the several phases of the law brought into question.

The judgment is affirmed, and

It is so ordered.

SADLER, C. J., and McGHEE, COMPTON, and SEYMOUR, JJ., concur.