287 P.2d 229

**W. E. GORE and A. R. Brownfield,
Plaintiffs-Appellees.**

**v.**

**Gordon CONE, Defendant-Appellant,**

No. 5898.

Supreme Court of New Mexico.

Aug. 22, 1955.

Cowan & Schubert, Hobbs, Ward & Carrell, Lovington, for appellant.

Heidel & Swarthout, G. T. Hanners, Howell Spear, Lovington, for appellees.

KIKER, Justice.

In this case, the defendant, appellant here, Gordon Cone, was the owner of an undivided one-half interest in a large number of town lots at Lovington. The lots were unimproved and were rented to Benton Mosley for pasture. Mosley paid rent to the defendant each of the years 1934 to 1944 inclusive. There is no claim that Mosley was ever delinquent during that time in the payment of any rent upon said property.

In 1938 taxes were not paid on the property; and again in 1940 the owners failed to pay the tax levied thereon. The property was sold for taxes so delinquent. There was no redemption from any sale during the two years allowed therefor.

More than two years after the tax sales, tax deeds were issued by the county treasurer and delivered to the State Tax Commission. The last deed was received by the State Tax Commission in the year 1944.

After the year 1944, Mosley paid no more rent to the defendant Cone.

In the year 1947 after the state had held tax deeds to the land for more than three years, Mosley applied for and received a tax deed to the real estate in question. In the year 1952 he sold it by quitclaim deed executed by him and his wife to the plaintiffs in this case.

Plaintiffs brought this suit to quiet title against defendant, Cone. Plaintiffs claim to be the owners by virtue of the deed received from Mosley, to all of the surface rights of the land involved in the suit, and to three-fourths of the mineral rights in and under said land. Defendant answered, claiming to be the owner of a one-half undivided interest in the real estate, including both surface rights and mineral rights.

After this suit was instituted, plaintiff Gore sold whatever interest he had in the property to the plaintiff A. R. Brownfield.

After trial, judgment was entered establishing the title, in fee simple, of plaintiff Brownfield to the properties involved in the suit.

Defendant has appealed, assigning for reversal nineteen alleged errors. The separate assignments, however, have been so grouped that two propositions only are discussed in appellant's brief.

The first of these propositions is that a tenant in possession of property cannot acquire a title superior to his landlord's through the purchase of a tax title.

The answer of plaintiff to defendant's Point I just stated is that in the absence of special circumstances imposing duty upon a tenant to pay taxes, tenant cannot be prohibited from acquiring the landlord's title by tax deed.

Nothing is shown in the brief as to the nature of the rental contract or as to its terms, except the bare fact that for the use of the land for pasture for his cattle, Mosley, the alleged tenant, paid to the defendant $35 per year. Whether the contract was oral or written does not appear, and nothing is said about the term for which the tenancy should exist.

Appellant asserts that Mosley was the tenant of the defendants at the time he purchased the property from the state, and that he continued to be the tenant of the defendants until 1952, when he sold the property by quitclaim deed to plaintiffs Gore and Brownfield. Upon that premise, defendant cites cases from several courts to the effect that a tenant in possession may not without the consent of his landlord buy a tax title to the property held by him. In support of his contention that a tenant while in possession cannot buy a tax title to the property belonging to his landlord, defendant cites Bailey as Administrator v. Campbell, 82 Ala. 342, 2 So. 646, 647, which states that in case the tenant buys at tax sale the presumption in law would be that he takes the assignment of the certificate of purchase or even buys at tax sale for the protection of his own interest, which

"* * * would be equally affected with the reversionary interest of the landlord, just as in the analogous case of mortgagor and mortgagee, where the tax sale overrides the interest of the one as well as that of the other. * * * The result would be that every attempted purchase made by a tenant of rented premises at a tax sale would operate merely as a *payment* of the tax, and not as a valid purchase."

Appellant cites also and quotes from Brunson v. Bailey, 245 Ala. 102, 16 So.2d 9. A later Alabama case holding as do the cases cited by appellant is Crim v. Holcombe, 254 Ala. 692, 49 So.2d 277.

Appellant also calls attention to the Arizona holding that a tenant who is under no obligation to pay taxes may properly acquire tax deed to his landlord's property, but that he may not do so if in default in payment of his rent. The case cited is Eckert v. Miller, 57 Ariz. 94, 111 P.2d 60.

There are two later Arizona cases, one of which is cited by appellee, both holding that a tenant in possession may purchase a tax title to the rented property when not under special obligation to pay the taxes. These cases are mentioned because of the very interesting situation which arose between the parties. In Sanguinetti v. Quon, 59 Ariz. 298, 126 P.2d 804, taxes became delinquent without the knowledge of the landlord and the property was sold to the state. The tenants then acquired the property in the name of their infant son; and it was held that a tenant is not prohibited from buying a tax title to rented premises so long as there is no special fiduciary relation in regard thereto. The other of the two cases is Quon v. Sanguinetti, 60 Ariz. 301, 135 P.2d 880, 881. In this case, Quon, who had leased the property in question to Sanguinetti for a term of 5 years, brought suit after Sanguinetti had bought the tax title to recover the balance of rent due for the 5 year term. Trial of this case was before the court without a jury, and resulted in judgment in favor of Quon, the former owner, for $1,256.42, the remainder of the rent owing for the term.

The sale for taxes was set up by Sanguinetti, who had stopped paying rent after taking deed in his son's name, and Quon admitted that Sanguinetti had bought the property but made his claim for the balance of rent for the full term. The Supreme Court of Arizona held that the Sanguinettis were within their rights when they purchased the tax title of the premises and that thereby they acquired the property involved, pointing out that it had been so held in the case of Sanguinetti v. Quon, supra. Then the court, in Quon v. Sanguinetti, supra, said:

"There is a wide distinction between the rights of defendants to buy the adverse title and their right to assert such title against their landlord."

A quotation is then taken in the opinion from 32 Am.Jur. 118, Sec. 113, as follows:

"* * * Some authorities have expressed the view that a tenant cannot acquire a title which is adverse to his landlord's title, and that where he does so it will be presumed that his purchase was made for the benefit of and to protect the landlord's possession. Others take the position that while the relation of landlord and tenant prevents the tenant from setting up any adverse title against his landlord, it does not prevent him from buying up a title to be asserted after termination of the tenancy, and the redelivery of the premises to the landlord. Under this rule, a tenant may acquire a title other than that which his landlord has or had, but he cannot avail himself of it while retaining possession of the land."

In that case there was a written lease which bound the Sanguinettis to pay rent for the full five years, and the court held they must do so.

Appellant cites also the following cases, as well as text declarations, supporting the proposition contended for: Chrisman v. Hough, 146 Mo. 102, 47 S.W. 941; Connecticut Mutual Life Insurance Co. v. Bulte, 45 Mich. 113, 7 N.W. 707.

Appellant also cited New Mexico cases holding that one cotenant cannot, by the purchase of a tax title, defeat the title of other cotenants. He cites: Smith v. Borradaile, 30 N.M. 62, 227 P. 602, and Torrez v. Brady, 37 N.M. 105, 19 P.2d 183, and claims that a tenant bears a similar relationship to his landlord as cotenants, one to another. Next he cites Zaring v. Lomax, 53 N.M. 273, 206 P.2d 706, and Matlock v. Mize, 55 N.M. 218, 230 P.2d 246, both holding that a life tenant may not defeat the future estate of the remainderman by acquiring for himself a tax title to the property; and argues that as the life tenant is to the remainderman, so is the tenant in possession for a term, to the landlord. Appellant also likens the tenant to one of two or more successive mortgagees, citing Riley v. Bank of Commerce of Roswell, 37 N.M. 338, 23 P.2d 362; and argues that just as one of two successive mortgagees cannot acquire a tax title to the real estate and thereby destroy the rights of another mortgagee, so a tenant in possession cannot defeat his landlord.

Appellant requested findings of fact and conclusions of law and assigned error upon failure of the court to give some of those requested. Among others, there was request numbered 3, which asked the court to find that Mosley held the property in question as tenant continuously until he delivered possession of the premises to Gore and Brownfield. The court declined to make this and other findings requested by appellant.

Though error is assigned upon the failure of the court to give the requested findings of fact and certain requested conclusions of law, there is no argument in appellant's brief and no testimony is set out in the brief bearing upon the findings requested. The argument is purely of the application of the law to facts as appellant has assumed them to be. It has been repeatedly held by this court that the findings of fact made by the District Court, unless set aside by the Supreme Court, are the facts upon which the case must rest. In re White's Estate, 41 N.M. 631, 73 P.2d 316; State ex rel. Magee v. Williams, 57 N. M. 588, 261 P.2d 131.

Assignments of error not supported by citation and authority, point or argument, will not be considered. Robinson v. Mittry Bros., 43 N.M. 357, 94 P.2d 99; Faubion v. Tucker, 58 N.M. 303, 270 P.2d 713.

Under the authorities above cited, the findings requested by appellant will not be considered.

Appellee answers appellant's arguments under the Point I by the declaration that in the absence of special circumstances imposing duty upon tenant to pay taxes, the tenant is not prohibited from acquiring the landlord's title by a tax deed; and appellee quotes from the annotation to Holzer v. Rhodes, 24 Wash.2d 184, 163 P.2d 811, 172 A.L.R. 1173, the following: (The annotation begins at page 1184, and the quotation which follows is in paragraph "a" thereof.)

"In accord with the view that the tenant's estoppel extends only to the condition of the title as it existed at the commencement of the tenancy and does not include an estoppel to assert a change in the title occurring during the tenancy, the majority of the courts hold that one in possession of real estate as a tenant may acquire a title based on a sale for taxes or assessments, in the absence of special circumstances imposing upon him the duty of paying the taxes or assessments."

In the case of Bass v. John, 217 Ark. 487, 230 S.W.2d 946, 948, the court had before it a situation similar to that in the case under consideration. The court said:

"Appellant's contention that at the time of the tax sale to appellee, appellee and Dr. John, his father, as partners and acting in unison, held and occupied the land in question as tenants under an alleged lease agreement with

appellant's 'co-owner' and that 'appellee's purchase was in equity and effect a redemption' is without merit, for the reason that even though appellee were a tenant in possession (which the preponderance of the evidence fails to support) their being no evidence that appellee agreed to keep the taxes paid, he was within his rights in purchasing at the tax sale.

"In the recent case of Billingsley v. Lipscomb, 211 Ark. 45, 200 S.W.2d 510, we held: (Headnotes 3 and 4) 'A tenant who is under no obligation to pay the taxes on the land he occupies may purchase at a tax sale the lands of which he is in possession and may set up such title, and the sale, if otherwise valid, extinguishes the landlord's title and terminates the lease. * * *'"
See also the following cases:

Hill v. Barnard, 216 Ark. 29, 224 S.W.2d 31; Hales v. Lee, 199 Okl. 110, 184 P.2d 451; McKay v. Shaffer, 202 Miss. 558, 32 So.2d 746; Phillips v. Gibbs, 198 Okl. 270, 177 P.2d 1017.

Appellee denies that the relationship between the landlord and tenant absent peculiar and unusual provisions of a contract, is a fiduciary one. He quotes Holzer v. Rhodes, supra, and Eckert v. Miller, supra, in support of his proposition that ordinarily the tenant has no fiduciary obligations to the landlord; admitting, however, that the contract between the parties may be so

made as to create a fiduciary relationship. This proposition is asserted by appellee in connection with his argument as to the New Mexico cases cited by appellant as to the duties and obligations of cotenants and life tenant and remainderman.

There is much conflict in the decisions as to the right of tenant to buy and assert tax title against his landlord. We have cited a sufficient number of cases above, we think, to justify our holding, with what we understand to be the weight of authority, that a tenant who owes no duty to pay taxes for his landlord, and who has not withheld rents due, or in some other manner lulled his landlord into tax delinquency, may, while in possession of the property, both buy a tax title, and assert it.

All of the foregoing treats of this case as if Benton Mosley continued to be the tenant of the defendant, Cone, until and after he purchased the property in question from the State of New Mexico.

The parties are in dispute as to whether Mosley was Cone's tenant in the year 1947. The briefs do not contain or refer to any evidence which shows whether the relationship of landlord and tenant existed at the time of Mosley's purchase from the state; and appellee takes the position that when deed was issued to the State of New Mexico in 1944, the State took as full and complete title as the former owners had; and that Mosley took by deed all the state had.

Among other provisions in the statute providing for deeds to the state, Sec. 76–724, NMSA 1941 was contained the following:

"* * * title so acquired shall be in all respects the same as any title acquired by the state by purchase * * *."

It was held in Zaring v. Lomax, 53 N.M. 273, 206 P.2d 706, 707, that the tax deed from the State conveys to the purchaser:

"* * * a new and paramount title to the lot, from the State; an independent and complete grant that extinguished all prior titles, interests and equities that were held by plaintiff, the defendant and every and all others that claimed or could claim any interest therein * * *."

Section 76–724, NMSA 1941 was repealed in 1953, some changes being made at that time, but the language quoted above as to the nature of the title acquired by the State, has at all times, and still does, remain in the statute providing for deeds to the State. Section 72–8–15, NMSA 1953.

We hold that the defendant, Gordon Cone, had no right, title or interest in the real estate in question after the year 1944. He did have, however, a right to repurchase the property by making application so to do prior to the acceptance by the State Tax Commission of an offer of some other person to purchase it. This was not an interest in the land, itself. Having no interest, he could not, as far as the record

**36**

in this case shows, claim rental in any amount from Benton Mosley after the year 1944. So Mosley was not delinquent when he bought the tax title from the State.

In the beginning of the argument of Point I, appellant lists the number of his assignments of error as involved under that point. Some of these assignments go to the giving of conclusions of law and the refusal to make findings of fact requested by appellant. Nowhere under Point I does plaintiff include in his brief any of the evidence bearing upon these alleged errors, and he makes no argument and cites no authority that specifically calls the correctness of any finding of fact or conclusion of law to the attention of the court. Appellant has treated all findings of fact and conclusions of law and requested findings of fact not given, as a whole, and has made no specific reference to any in his argument under Point I.

Supreme Court Rule 15(6) states:

"Assertion of fact must be accompanied by references to the transcript showing a finding or proof of it. Otherwise the court may disregard the fact."

Appellant's statement of what he contends are the facts does refer to some pages of the transcript, but there is an utter failure on the part of appellant to again refer to the transcript as far as findings and conclusions and requested findings

and conclusions are concerned under the discussion in his Point I.

In Richards v. Wright, 45 N.M. 538, 119 P.2d 102, 103, this court said:

"Appellant has made no point or argument, and cited no authority that specifically calls in question the correctness of the trial court's ruling on making any finding of fact or his refusal to make any requested finding. Under this state of the record the findings of the trial court will not be disturbed by us."

See also Robinson v. Mittry Bros., cited supra; Spain Management Co. v. Packs Auto Sales, 54 N.M. 64, 213 P.2d 433; Kilpatrick v. State, 58 N.M. 88, 265 P.2d 978.

The rule above quoted is applicable in the consideration of both civil and criminal cases as just shown by these citations. Between Robinson v. Mittry Bros., supra, and Kilpatrick v. State, supra, there are many other New Mexico cases expressing the same proposition. In the circumstances, Point I must rest upon the findings of fact and conclusions of law of the court.

For his second point, appellant states that the plaintiff in the case, appellee here, was not a bona fide purchaser for value without notice. The assertion is in conflict with the findings and conclusions of the court.

Appellant says this point is based upon certain assignments of error. The first of these is appellant's Assignment No. 2, which is that the court erred in making its conclusion of law as follows:

"That the plaintiffs were innocent purchasers for value without personal notice of any defect or infirmity in the title other than the fact that the same was based upon tax deeds."

Appellant argues that in this case it was the duty of appellee to inquire of Mr. Cone, the appellant, before purchasing from Mr. Mosley.

In support of this contention, appellant cites the case of Sawyer v. Barton, 55 N.M. 479 at page 485, 236 P.2d 77, and quotes from the state report. The quoted holding is that where facts are brought to the knowledge of the purchaser of such nature that in the exercise of ordinary care he ought to inquire but does not, his failure so to do amounts to gross or culpable negligence, and he is charged with knowledge of all facts which the inquiry, pursued with reasonable diligence, would have revealed.

The facts in Sawyer v. Barton, supra, upon which the legal proposition quoted above is based, are that Mary E. Britton was the owner of an undivided 5/16 interest in the minerals under certain lands, and her three children by her deceased husband were the owners of a 3/16 mineral interest. Mrs. Britton then conveyed an undivided ¼ mineral interest to one Hanson, who promptly reconveyed the same to Barton. The interests were in two quarter sections. Before these mineral deeds were recorded, Mrs. Britton conveyed an undivided ¼ mineral interest in the quarter section involved in the suit. This mineral deed was recorded by Barton on the same date as were the deeds made to him by Hanson. Mary E. Britton and her husband having conveyed an undivided one-half interest in the minerals in the two quarter sections, the Brittons, after the conveyances last mentioned, had no further mineral interest in the lands involved. Before the last deed to Barton was made, Mary Britton did not own an undivided ¼ interest in the minerals. Her interest remaining after previous conveyances was a 1/16 interest, while her children owned 3/16. Mary Britton then took from her children a quitclaim deed to herself conveying all interest in the lands. This she furnished to Barton with a warranty deed for the undivided ¼ mineral interest. The deed from the children was not recorded. About four years later, Mrs. Britton and her children executed a deed to U. D. Sawyer conveying to him, or purporting so to do, an undivided 3/16 interest in the minerals in and under the land in question. This court held with Mr. Sawyer that he was not to be charged because of the unrecorded quitclaim deed Mrs. Britton had taken from the children and had furnished Mr. Barton. It was held, how-

ever, that because of negotiations which were carried on by Mr. Sawyer over a period of at least two years, and of the state of the record as shown by deeds which were recorded, and information that he received that Mrs. Britton had over-conveyed, that he was charged with notice of the situation. The lower court was reversed and Mr. Sawyer got no land.

There are no facts in this case similar to the facts in the Sawyer case, supra.

In this case, if the appellee had gone to appellant and made inquiry about the property, the best information he could have received from Mr. Cone would have been that Mr. Cone was claiming that Mosley, the holder of the title from the state, bought from the state while his tenant. If this fact had been stated by the appellant to appellee, it would have raised the same legal question that has existed in this case; it would not have given knowledge of any fact to the appellee which would have been convincing that he could not safely buy from Mosley. He might have hesitated to do so, if so informed, but he was advised by his attorney that it would be necessary for him to quiet title because of possible defects in the tax proceedings and to obtain quitclaim deeds from appellant and his former co-owner, or to quiet title against them. This did not prevent appellee from buying from Mosley, and this suit is a result of that purchase.

We hold that the failure to talk with appellant before buying from Mosley did not charge appellee with knowledge of any fact which could then, or can now, affect his right, title or interest.

Under this point also, appellant has referred to assignments of error which assert that there was error in the refusal to give appellant's findings of fact and in the court's conclusions of law, but there is no evidence brought into the brief to show why error should be declared on account of any of such findings of fact and conclusions of law. There is no argument or citation of authority pointing specifically to any error upon any particular finding of fact.

In this situation, because of the rule established in Robinson v. Mittry Bros., and the other cases, all cited supra, to the same point, the requested findings of fact and conclusions of law, complained of, will receive no further consideration.

From all the foregoing it follows that the judgment of the lower court should be affirmed, and it is so ordered.

COMPTON, C. J., and LUJAN and McGHEE, JJ., concur.

SADLER, Justice (dissenting).

The old common law maxim that the tenant may not dispute his landlord's title, as well as elementary principles of good morals, all repudiate the right of a tenant

to purchase a tax title on the demised premises. All of our past decisions having a bearing on the subject, such as Smith v. Borradaile, 30 N.M. 62, 227 P. 602; Eager v. Belmore, 53 N.M. 299, 207 P.2d 519 and Zaring v. Lomax, 53 N.M. 273, 206 P.2d 706, are out of harmony with the result declared.

Because I think the judgment should be reversed and the majority hold otherwise,

I dissent.